[No. 40977. En Banc. May 6, 1971.]

*In the Matter of the Application for a Writ of Habeas Corpus of* ROBERT J. RIDDELL, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*

*Richard L. Norman* (of *Springer & Norman*), for petitioner (appointed counsel for appeal).

*Slade Gorton, Attorney General,* and *Stephen C. Way, Assistant,* for respondent.

McGOVERN, J.—Petitioner Robert J. Riddell was charged with the crime of second-degree assault. Convicted by a jury, he was given a suspended sentence and released on probation. In *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968) we affirmed the subsequent revocation of his probationary status. By petition for writ of habeas corpus, he now asks for a new trial, claiming error at the time of his conviction.

The issue before us brings into question the prosecution's use for impeachment purposes of a statement made by the petitioner before trial. No hearing was held at the time of the trial or prior thereto for the purpose of determining

whether the statement was voluntary. After the trial and under an order of reference issued by this court, an evidentiary hearing was held in the manner prescribed by CrR 101.20W. The trial court determined that the statement given by the petitioner was not induced by any physical or psychological coercion. It also found, however, that the petitioner had not been advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) and *State v. Creach,* 77 Wn.2d 194, 461 P.2d 329 (1969), and that, therefore, the statement was not voluntarily made. These findings are not challenged by the state.

Petitioner advances two separate arguments in support of his conclusion that his pretrial statement cannot be used against him for impeachment purposes and that he is entitled to a new trial because the trial court ruled otherwise. First he sets forth the general rule which prohibits the use by the state of unconstitutionally obtained evidence and then shows that the facts here do not qualify as an exception to that general rule. *See, Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (1954). In *Walder* the court authorized impeachment of the defendant with illegally obtained evidence when the matters under scrutiny did not bear upon his guilt or innocence of the crime charged, but were related to collateral issues.

Petitioner next asserts that while *Walder* involved tangible evidence obtained in violation of the fourth amendment to the United States Constitution, the governing law with reference to the use of an involuntary statement is *Miranda v. Arizona, supra.* He contends that *Miranda* requires a total prohibition of the use of involuntary statements for impeachment purposes.

After examining the pertinent decisions, we conclude that there exists no compelling precedent which totally prohibits the use of involuntary statements for impeachment purposes, despite the tangential reference to impeachment in *Miranda,* which reads, at page 477:

In fact, statements merely intended to be exculpatory by

the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.

When examined in context it appears that the court in using this language was merely illustrating its desire to preclude meaningless differentiation between inculpatory and exculpatory intent. The real issue decided in *Miranda* was the admissibility into evidence of a defendant's confession or statement as part of the prosecution's case in chief. *See, e.g.,* Kent, *Miranda v. Arizona—The Use of Inadmissible Evidence for Impeachment Purposes,* 18 W. Res. L. Rev. 1177 (1967). Neither *Miranda,* nor *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961), which first announced that the exclusionary rule extends to the state as well as the federal system, specifically overruled *Walder.*

The question is whether *Miranda, Mapp* and other decisional law which develop in greater detail the matters which cannot be included within the state's case in chief also indicate a change in exclusionary policy of such significance that they implicitly undermine the impeachment exception on the *Walder* facts or in the confession context to which it spread. The answer must be in the negative. The decision in *Walder* was made in the face of 40 years of broad federal exclusion based upon the rationale of deterring police misconduct. *E.g., Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182, 24 A.L.R. 1426 (1920); *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4, 51 A.L.R. 409 (1925); and *Nardone v. United States,* 308 U.S. 338, 84 L. Ed. 307, 60 S. Ct. 266 (1939). In light of the *Walder* setting, the extension of the rationale in *Mapp* and *Miranda* cannot be viewed as implicitly overruling *Walder.* In fact, as hereafter noted, the *Walder* doctrine has been extended.

Turning to the facts before us, the evidence introduced by the prosecution on cross-examination was outside the limits of the old *Walder* exception, but nonetheless proper. During a quarrel with his neighbor over the behavior of the neighbor's dog, a rifle held by the petitioner discharged, the bullet striking the neighbor in the left foot. The petitioner was charged with second-degree assault. To convict, the state was obligated to show that the petitioner "willfully" assaulted his neighbor. On direct examination the petitioner testified that the rifle which he held had discharged accidentally when his wife hit his arm.

After demonstrating to the jury the manner in which he was holding the rifle, the petitioner's direct testimony was as follows:

Q. All right, well then what happened after you had the gun like that? A. Well I had it here and I heard the wife holler and she hit my arm. Q. And did you have it pulled back or cocked? A. No, it was down like that. That was it. Q. Did you have your finger on the trigger? A. No, no. Q. Did you pull the trigger at this time? A. No, I never. Q. All right, take the stand. When the gun went off did you intend for it to go off at that time? A. No, I didn't.

On cross-examination, the deputy prosecuting attorney made use of the pretrial statement in the following manner:

Q. All right, also Mr. Riddell, you testified on direct examination that you never touched the trigger. A. That's right. Q. Now is that correct? A. Yes, that's correct. Q. Well do you recall making this statement, that you signed, "I cocked the hammer and pulled the trigger. I thought the rifle was aimed towards the ground and only intended to scare Mr. Lewis". Did you make that statement?

Petitioner's statement that "I cocked the hammer and pulled the trigger" strongly suggests that the conduct was "willful" rather than accidental. Hence, the statement goes to the question of petitioner's guilt of the crime charged and would ordinarily have been heretofore declared inadmissible as beyond the limits of the *Walder* exception.

But *Walder* is no longer the leading case concerning the legal issue before us. Once again the United States Supreme Court has weighed the considerations of "preventing perjury" and "deterring police misconduct" while still addressing itself to the question of when can tainted evidence be put to a limited use for impeachment purposes. *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971).

In *Harris*, a statement made by the defendant to the police under circumstances rendering it inadmissible to establish the prosecution's case in chief was held to be properly used against the defendant on cross-examination to impeach his credibility. The defendant there, as here, did not contend that the statement made to the police was coerced or involuntary. In both *Harris* and here the prosecution made no effort in its case in chief to use the statement allegedly made by the defendant because certain Miranda warnings had not been given. In both *Harris* and here, when confronted upon cross-examination with his prior inconsistent statement, each defendant stated that he did not remember making that prior inconsistent statement. In both *Harris* and here the prior inconsistent statement was used by the state for impeachment purposes only.

Mr. Chief Justice Burger, speaking for the majority in *Harris*, said at page 225:

> It is true that Walder was impeached as to collateral matters included in his direct examination, whereas petitioner here was impeached as to testimony bearing more directly on the crimes charged. We are not persuaded that there is a difference in principle that warrants a result different from that reached by the Court in *Walder*. Petitioner's testimony in his own behalf concerning the events of January 7 contrasted sharply with what he told the police shortly after his arrest. The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police con-

duct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States* v. *Knox,* 396 U. S. 77 (1969); cf. *Dennis* v. *United States,* 384 U. S. 855 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

(Footnote omitted.)

The matter before us is controlled by the law of *Harris.* The petition of Robert J. Riddell for a writ of habeas corpus is therefore denied.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and STAFFORD, JJ., concur.

Petition for rehearing denied June 9, 1971.