[No. 28641-2-I.   Division One.   August 24, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES R. GREVE, *Appellant.*

*Tom P. Conom,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

KENNEDY, J. — James Greve appeals his conviction of attempted third degree rape of a child, claiming that the trial court incorrectly ruled that previously suppressed evidence could be used to impeach his testimony. Finding that, on the facts of this case, the trial court correctly interpreted the law governing the use of suppressed evidence for purposes of impeachment, we affirm.

## FACTS

On December 17, 1988, the appellant attended a party at a friend's home. Also at the party was C.W., age 15½. After C.W. became visibly intoxicated, the appellant gave her a ride home. During the ride home, appellant and C.W. allegedly had sexual contact. C.W. reported the matter to the police.

In the early morning hours of December 19, 1988, Edmonds police officers went to appellant's apartment. Appellant testified that when he went to the door he was told that he was under arrest. Appellant testified that the police came into his apartment, without his consent, and told him to get dressed. Appellant was subsequently taken to police

headquarters. One of the police officers testified that the police obtained appellant's permission to enter the home, and that he was arrested inside his home. The police had no warrant for appellant's arrest.

At the station, appellant was given his *Miranda*[1] warning, and he subsequently gave a written statement. According to police, in this statement, appellant indicated that when he was driving a girl home from the party she began playing with his penis with her head or her mouth on it for a couple of seconds. After giving the statement appellant was released.

The next day appellant voluntarily returned to the police station, without an attorney. After inquiring as to the status of his case, he proceeded to discuss the facts of the case with Officer Holmes for approximately 45 minutes.

The appellant was subsequently charged with third degree rape of a child, and later, by amended information, with third degree rape. Appellant then made a pretrial motion to suppress his statements to the police, based upon his warrantless arrest. After consideration of the issues at a CrR 3.5 hearing, the court ruled that there was a warrantless, illegal arrest in appellant's home, that both statements resulted from that arrest and that both statements should be suppressed pursuant to the fourth amendment to the federal constitution. The State moved twice for reconsideration of this ruling, and both motions were denied.[2]

At the beginning of the trial, appellant moved in limine to preclude the use of his statements for impeachment purposes, should he choose to testify. Finding that the State Supreme Court would probably follow federal guidance in interpreting article 1, section 7 of the Washington Constitution, the trial court decided to allow the use of the suppressed statements for purposes of impeachment. Based on

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2]The State has not cross-appealed these pretrial rulings.

the ruling, counsel for the defense indicated that appellant would not testify at trial and appellant did not testify.

The case was tried to a jury, which returned a verdict of guilty of the lesser included offense of attempted rape of a child in the third degree. Judgment and sentence were subsequently entered. This appeal was originally taken to the Washington Supreme Court but was transferred to this court for disposition on June 15, 1991.

## DISCUSSION

The appellant contends that the trial court erred in allowing the use of the previously suppressed evidence for impeachment purposes, claiming that such use is not allowed by federal law and that even if it were allowed under federal law, the protection afforded a defendant under article 1, section 7 of the Washington Constitution precludes such use.

Relying on *State v. Brown*, 113 Wn.2d 520, 540, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989), the State contends that appellant may not raise this issue on appeal. The State contends that, since appellant did not testify at the trial, the issue of a constitutional violation is merely speculative. In *Brown*, the Washington Supreme Court held that before a party may object to the admission of a prior conviction to impeach testimony under ER 609, he or she must first testify. The court reasoned that, without actual testimony, the proposed error is too speculative and offers the defendant a "free pass" to appeal when testimony may not otherwise have been offered.

However, "admission of prior conviction evidence under ER 609 [does not] constitute an unconstitutional procedure even where error occurred." *Brown*, 113 Wn.2d at 539. By contrast, the use of evidence that is suppressed pursuant to the Fourth Amendment does raise constitutional concerns. Therefore, the adoption of the *Brown* rule in the context presented in the present case may "unacceptably infringe upon the defendant's rights". *See Brown*, at 538. In a similar situation, the Supreme Court of Vermont refused to bar

consideration of self-incrimination issues on appeal simply because the defendant did not testify at trial.

> The State argues that the defendant may not raise due process or self-incrimination issues on appeal in the absence of any testimony or offers of proof at trial, citing *Luce* v. *United States*, 469 U.S. 38 (1984). The State's reliance on *Luce* is misplaced. In *Luce*, the United States Supreme Court distinguished the facts in that case, where a federal court's preliminary ruling on a question *not reaching constitutional dimensions* was held not to be reviewable, from its earlier cases, *Brooks* v. *Tennessee*, 406 U.S. 605 (1972), and *New Jersey* v. *Portash*, 440 U.S. 450 (1979), where the Court reviewed *constitutional* challenges to state court rulings which acted to discourage defendants from testifying. *Luce*, 469 U.S. at 42-43.

*State v. Brunelle*, 148 Vt. 347, 356, 534 A.2d 198, 204 (1987).

We choose to adopt the reasoning of the Vermont court and reach the merits of appellant's claim.

Although federal case law concerning the use of illegally seized evidence for impeachment purposes has varied over the course of time, the use of such evidence is currently allowed under the fourth amendment to the United States Constitution. In the case of *Agnello v. United States*, 269 U.S. 20, 35, 70 L. Ed. 145, 46 S. Ct. 4, 7 (1925), the first Supreme Court case to examine this question, the Court held that evidence obtained in violation of the Fourth Amendment could not be used in rebuttal testimony. Although Agnello had not testified concerning the illegally seized evidence on direct examination, the Court stated that:

> "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."

*Agnello*, 269 U.S. at 35 (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 64 L. Ed. 319, 40 S. Ct. 182, 183 (1920)).

The scope of the *Agnello* ruling was narrowed in the later case of *Walder v. United States*, 347 U.S. 62, 65, 98 L. Ed. 503, 74 S. Ct. 354 (1954). In that case, the Supreme Court held that illegally seized evidence could be used to rebut direct testimony as long as it was not used to rebut a mere

denial of the elements of the case with which the party was then charged. *Walder*, 347 U.S. at 65.

In the later case of *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), the Supreme Court reexamined *Walder* and retreated further, finding that statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 116 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.4th 974 (1966) could be used to impeach witness testimony as to all matters. *Harris*, 401 U.S. at 224-25. As stated by the Court, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris*, at 225. Although *Harris* concerned the admissibility of evidence under the Fifth Amendment, the case was cited with approval in *United States v. Havens*, 446 U.S. 620, 64 L. Ed. 2d 559, 100 S. Ct. 1912 (1980), a case concerning the Fourth Amendment, in which illegally seized evidence was allowed to be introduced in order to impeach a witness' testimony during cross examination.

Under present federal constitutional case law, previously suppressed evidence may be used for impeachment purposes regardless of its effect on the defendant's decision of whether or not to testify. Although there is a constitutional right to testify in one's own behalf, the federal cases recognize no chilling effect on an accused's right to take the stand in his own defense from the use of suppressed evidence in rebuttal, reasoning that a requirement that such testimony be truthful does not impinge on the right to testify. *See Nix v. Whiteside*, 475 U.S. 157, 173, 89 L. Ed. 2d 123, 106 S. Ct. 988 (1986) (The right to testify does not include "any right whatever" to testify falsely.). Furthermore, the federal cases examining the question consider the inability of the State to directly introduce suppressed evidence in its case in chief to be sufficient to deter illegal action on the part of authorities. *See Havens*, 446 U.S. at 626.[3]

---

[3]The State also argues that the trial court's ruling was correct because a statement made outside the home after an illegal arrest is not tainted and

Appellant argues that, even if the use of such evidence for impeachment purposes is allowed under the fourth amendment to the federal constitution, the use of such evidence for impeachment purposes is not allowed under article 1, section 7 of the Washington Constitution. Although there is no Washington case law directly governing this issue, we believe that the use of such evidence, under the facts of the present case, is permitted under the state constitution as well.

The criteria usually employed to determine whether article 1, section 7 will be deemed to provide greater protection of individual privacy than the Fourth Amendment are set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). These nonexclusive, neutral criteria include (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. *Gunwall*, at 58, 61-62. Since the "fruit of the poison tree doctrine" is a judge-made doctrine which is not based on constitutional structure, history or textual language, the relevant criteria in this particular case, as to any distinction between the state and federal constitutions, are prior case law and matters of particular state or local concern.

---

should not be suppressed for any reason. *See New York v. Harris*, 495 U.S. 14, 109 L. Ed. 2d 13, 110 S. Ct. 1640 (1990). However, the State did not cross-appeal the trial court's original ruling that both of appellant's statements were to be suppressed. Although there is no need to cross-appeal an issue that naturally flows from the other issues being considered on appeal, the suppression ruling is not such an issue. It is the law of the case and since it was not appealed, cannot be reviewed by the Court of Appeals. *State v. Hubbard*, 103 Wn.2d 570, 574, 693 P.2d 718 (1985).

The State further contends that appellant cannot challenge the trial court's in limine ruling based on federal law since he conceded below that federal law would allow the introduction of evidence. It is true that the appellant's argument below was based only upon provisions in the state constitution. The evidence is clearly allowed under the federal constitution and it is necessary for us to address the federal cases, as part of our analysis of the state constitutional issues, in any event.

Appellant argues that the language of article 1, section 7 protecting "private affairs"[4] requires us to conclude that the protections of article 1, section 7 are much stronger than the federal guaranties, with respect to the bar against the use of illegally seized evidence. While this may be true in general, *see, e.g., Gunwall*, 106 Wn.2d at 65 n.20, we are persuaded by examining prior case law concerning similar issues, that the Washington Constitution allows the use of suppressed evidence for purposes of impeachment in the present case.[5]

In the case of *Riddell v. Rhay*, 79 Wn.2d 248, 253, 484 P.2d 907, *cert. denied*, 404 U.S. 974, 30 L. Ed. 2d 291, 92 S. Ct. 336 (1971), the Washington Supreme Court, citing *Walder* and *Harris v. New York, supra*, held that evidence obtained in violation of *Miranda* could be utilized to rebut or impeach a defendant's testimony. This holding was reaffirmed, in dicta, in *State v. Hubbard*, 103 Wn.2d 570, 693 P.2d 718 (1985), where the court held that illegally obtained confessions may not be used to impeach the testimony of defense witnesses other than the defendant himself. *Hubbard*, 103 Wn.2d at 575.

■ ■ Although these cases concern the use of evidence obtained in violation of *Miranda* rights, both of them cite cases regarding the use of evidence obtained in violation of

---

[4]Article 1, section 7 states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

[5]Appellant has cited cases from other jurisdictions which bar the use of previously suppressed evidence for impeachment purposes. *See, e.g., State v. Isom*, 306 Or. 587, 761 P.2d 524 (1988) (Where defendant affirmatively asks for counsel and counsel is denied, statements made by defendant cannot be used for impeachment purposes.). However, such decisions, based as they are on distinctive state constitutions, do not control our opinion in the present case, and in any event are not particularly illuminating regarding the issue we face. For instance, the result in *Isom* was predicated on the *intentional* violation of a *right to counsel*. *Isom* offers no opinion on whether state law protections are generally greater than the federal guaranties in shielding a defendant from the use of illegally seized evidence for impeachment purposes.

the Fourth Amendment for purposes of impeachment of a defendant. The reasoning used to support the Fifth Amendment decisions is generally applicable to similar situations arising under the Fourth Amendment and article 1, section 7 of the Washington Constitution. The court in *Riddell* quoted language from *Harris* which emphasizes that, although a defendant must be allowed to testify, he has no right to testify untruthfully.[6] The same logic applies to the use of the suppressed evidence in the present case.[7] The suppression of the tainted evidence in the State's case in chief preserves the purposes of article 1, section 7, which are to deter police misconduct, protect the privacy of individuals, and preserve the dignity of the judiciary. *See State v. Bonds*, 98 Wn.2d 1, 12, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831, 78 L. Ed. 2d 112, 104 S. Ct. 111 (1983).

Police misconduct was adequately penalized and the right of privacy was adequately protected, in the present case, by the prohibition against the use of the illegally obtained evidence in the State's case in chief. It is likely that appellant's conviction of the lesser included offense occurred because the State was prevented from using appellant's statements made after the illegal arrest and entry in its case in chief. Furthermore, the introduction of suppressed evidence to discourage a defendant from perjuring himself directly furthers

---

[6]*See Riddell*, 79 Wn.2d at 253 (quoting *Harris*, 401 U.S. at 225).

[7]We do not mean to imply that the appellant's or any other defendant's trial testimony is necessarily untruthful merely because it may differ from a prior statement. Part of the reasoning supporting the exclusion of statements obtained from accused persons in violation of their constitutional rights is that such statements may be inherently unreliable. That concern does not disappear when a defendant testifies in a contradictory manner at trial. Here, however, the appellant was detained only briefly at the police station following his unlawful arrest and he voluntarily returned there the next day to discuss the accusation against him at great length. He was given his *Miranda* warning before he made the statements. There was no prolonged grilling by the police and no hint of physical intimidation or coercion. Although we deplore the increasing frequency of cases coming to this court involving warrantless arrests of suspects in their homes where there is a complete absence of exigent circumstances, we see no indication in the record of this case that the police misconduct here resulted in any inherently unreliable statements.

the goal of preserving the dignity of the judicial process, *as long as the police misconduct in question is not of such a degree that the previously suppressed statement is inherently unreliable.* We can envision situations in which police misconduct may be so egregious as to bar *all* use of suppressed evidence. A different set of facts might lead to a different result. For example, we could not countenance the use of a physically coerced statement at any stage of a trial.

We hold that the use of previously suppressed evidence obtained in violation of article 1, section 7 of the state constitution, for purposes of impeachment, must be determined on a case-by-case basis. Our supervisory responsibility to deter police misconduct and to preserve the dignity and integrity of the judicial process forbids a blanket ruling that such evidence is *invariably* admissible for purposes of impeachment. Under the particular facts of the present case, excluding the statements from the State's case in chief, but permitting their use for purposes of impeachment adequately met the purposes of the exclusionary rule. The police misconduct, although deplorable, did not result in any inherently unreliable statements. There was probable cause to arrest the defendant. Had the police obtained an arrest warrant, it is likely that the appellant would have made the same statements. Under these circumstances, the dignity and integrity of the judicial process was not harmed by allowing the statements to be used for purposes of impeachment, had appellant elected to testify and to testify in a manner inconsistent with his prior statements.

The trial court's ruling was correct. Accordingly, we affirm.

GROSSE, C.J., and BAKER, J., concur.

Review denied at 121 Wn.2d 1005 (1993).