[No. 29776-7-I.   Division One.   May 16, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERTO S. LOPEZ, *Appellant*.

*Jessica A. Ryan* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

KENNEDY, J. — Roberto S. Lopez appeals his judgment and sentence for delivery of a controlled substance, alleging four errors by the trial court and ineffective assistance by his attorney. Lopez's contentions that the trial court erred in finding that Lopez waived his right to a speedy trial and finding that Lopez's statements to officers while in custody were voluntary and therefore admissible for impeachment will be treated in the published portion of this opinion. His remaining contentions will be treated in the unpublished portion. We affirm.

## FACTS

On May 24, 1991, after setting up a controlled drug sale operation involving a confidential informant, two police

officers observed an exchange of money and drugs between the informant and Lopez. Officer Larson, the first officer to speak with Lopez, asked him if he understood English. Lopez answered, "Very little". Larson began advising Lopez of his *Miranda*[1] rights, but stopped when he felt Lopez was not completely understanding what was being read to him. Larson called for Officer Garcia to provide the *Miranda* rights in Spanish.

Garcia first explained the rights to Lopez in English, to which he received no response. Garcia then explained the rights in Spanish, to which Lopez responded that he understood his rights, but did not understand why he was being detained.

Lopez was transported to the police station by Officer Larson. En route, Larson asked Lopez, in English, if he had any other drugs and if the money discovered in his possession had come from the sale of drugs. Lopez responded "No" to the first question and "Yes" to the second.[2]

Lopez was arraigned on June 11, 1991, and his trial was set for July 12, 1991. Mr. Kitching was assigned to represent Lopez. Shortly before the trial date, Lopez retained attorney Mark Mestel. On July 12, 1991, the prosecutor and Mestel presented an agreed order to continue the trial, signed by Lopez. Mestel's reason for requesting the continuance was to allow him time to prepare for trial.

Judge Thibodeau questioned both Mestel and Lopez extensively about the waiver of Lopez's speedy trial rights. Mestel indicated that he felt Lopez understood what was happening to him, and that he had previously discussed the matter with Lopez and his wife, who acted as a translator. Mestel then turned to Lopez and asked him if he thought the continuance was too long, to which Lopez responded that "it was too long for [him]". Mestel then reminded Lopez that

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2]Officer Larson also testified that he first engaged in "small talk" with Lopez, asking him where he was from and about his family. He testified that he believed from his responses that Lopez understood the conversation.

he was already committed for 33 months on another case, so that he would not be prejudiced by the delay.

The prosecutor stated that he had had previous dealings with Lopez, and that he felt confident that Lopez understood the proceedings. The court then asked Lopez directly whether Mestel had discussed the matter with him and whether he understood what was happening during the proceeding. Lopez responded, "Yes". Then the court asked him if he had been threatened or coerced, to which he replied, "No". Finally, the court asked Lopez if he was doing this freely and voluntarily and if he had discussed the matter with Mestel and with his wife. Lopez responded, "Yes". The court then entered the order granting the continuance until September 27, 1991.

At a CrR 3.5 hearing, Judge Knight ruled that the State was unable to show that Lopez expressly waived his *Miranda* rights. As a result, Lopez's statements to Officer Larson made in the police car on the way to the station could not come in in the State's case in chief. However, Judge Knight ruled, they could come in for impeachment if Lopez testified inconsistently with his statements to Officer Larson, in that the statements were voluntary.

On September 11, 1991, the court appointed an interpreter and Lopez's recently reappointed attorney, Mr. Kitching, requested a continuance beyond the speedy trial date. Lopez, however, refused to waive his right to a speedy trial. Accordingly, the trial was set for September 20, to go out to trial on September 23, 1991.

Prior to trial Lopez moved to dismiss based on an invalid waiver of speedy trial on July 12, 1991, arguing that, although Lopez signed the waiver, he did not do so voluntarily because no interpreter was present and because attorney Mestel simply ordered Lopez to sign the form without telling him what he was signing. This motion was heard by Judge Howard, who denied the motion.

At his jury trial, Judge Howard presiding, Lopez testified, admitting that he made certain statements to Officer Larson, but contending that he did not understand enough

English to comprehend what it was that Officer Larson had asked him. Larson then testified that he asked Lopez whether the money which was found in his pocket was from the sale of drugs, to which Lopez replied, "Yes".

## DISCUSSION

### WAIVER OF SPEEDY TRIAL

Lopez contends that his signature on the agreed continuance order which was presented on July 12, 1991, did not amount to a knowing and voluntary waiver of his right to a speedy trial because his language difficulty prevented him from understanding the nature of the proceedings. The record does not support Lopez's contention.

■ Where speedy trial rights arising from CrR 3.3(h)[3] are involved, the issue is nonconstitutional and a trial court's grant of a continuance will not be disturbed absent a manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). A trial court abuses its discretion if its decision is based on untenable grounds or is made for untenable reasons. *State v. Andrews*, 66 Wn. App. 804, 810, 832 P.2d 1373 (1992) (citing *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984)), *review denied*, 120 Wn.2d 1022 (1993).

■ The State does not have the burden of showing a voluntary waiver in this case. Rather, Lopez, who asked for a continuance, has the burden of showing that Judge Thibodeau abused his discretion in granting the continuance which Lopez and his attorney sought.

The ordinary rule in such a case is that a defendant who asks for a continuance pursuant to CrR 3.3(h) simply will not be heard to later complain that he received what he asked for. *State v. Dowell*, 16 Wn. App. 583, 588, 557 P.2d 857 (1976), *review denied*, 88 Wn.2d 1015 (1977); *State v. Livengood*, 14 Wn. App. 203, 209, 540 P.2d 480 (1975). Here,

---

[3]CrR 3.3(h) provides:

"Continuances or other delays may be granted as follows:

"(1) Upon written agreement of the parties which must be signed by the defendant . . . .. The agreement shall be effective when approved by the court on the record or in writing."

Lopez's language barrier presents the additional questions of whether Judge Thibodeau should have required an interpreter before granting the continuance and, since he did not, whether Judge Howard erred in denying Lopez's request for a CrR 3.3 dismissal.

■ Based on the record in this case, we find no error on the part of either Judge Thibodeau or Judge Howard. Judge Thibodeau reasonably relied on the representations of both Lopez's attorney and the prosecutor that Lopez had agreed to the continuance and that Lopez was fluent enough in English to understand the nature of the proceedings.[4] Judge Thibodeau also reasonably relied on Lopez's own statements of understanding and agreement in open court and on his signature on the agreed order of continuance. Judge Howard applied the abuse of discretion standard to these facts and found, correctly, that Judge Thibodeau did not err in granting Lopez's CrR 3.3(h) motion. Accordingly, we affirm both Judge Howard and Judge Thibodeau.

## Statements to the Police

Lopez challenges Judge Knight's finding that his statements to Officer Larson were voluntary and therefore admissible for purposes of impeachment. He argues that his statements could not have been voluntary because he was responding to questions asked in a foreign language. Lopez also argues that involuntary statements are not admissible for impeachment purposes.

Generally, a *Miranda* defect will prevent a statement from coming in in the State's case in chief, but not for purposes of impeachment, so long as the statement was "voluntary" in the sense that it was not the result of police coercion. *Riddell v. Rhay*, 79 Wn.2d 248, 252-53, 484 P.2d 907, *cert. denied*, 404 U.S. 974 (1971); *State v. Brown*, 113

---

[4]*Cf. State v. Mendez*, 56 Wn. App. 458, 462-63, 784 P.2d 168 (1989) (the trial court has no affirmative obligation to appoint an interpreter where defendant's lack of fluency is not apparent; one factor to be considered is where neither a defendant nor his attorney, those who are in the best position to know of a language deficiency, requests an interpreter), *review denied*, 114 Wn.2d 1017 (1990).

Wn.2d 520, 556, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989); *State v. Hubbard*, 103 Wn.2d 570, 575-76, 693 P.2d 718 (1985); *cf. State v. Greve*, 67 Wn. App. 166, 173-74, 834 P.2d 656 (1992), *review denied*, 121 Wn.2d 1005 (1993). Admissibility for purposes of impeachment is determined on a case by case basis. *Greve*, 67 Wn. App. at 175.

■ Lopez claims that his statement was not voluntary within the meaning of the general rule, because of his language barrier. However, whether Lopez did or did not understand sufficient English to intelligently converse with Officer Larson is a question of fact, and one that is different from the question of a voluntary *waiver* of rights, as required by *Miranda*, and from the question of police coercion or other police misconduct for purposes of determining whether a statement that cannot be used in the State's case in chief may be used for rebuttal or impeachment. Absent the problem of police misconduct, where the impeachment value of a prior inconsistent statement depends upon the disputed factual issue of whether a defendant understood English, that factual issue is properly submitted to the jury.

Given this, we hold that Judge Knight did not err. Officer Larson testified at the CrR 3.5 hearing as to the "small talk" between himself and Lopez, as well as his belief that Lopez understood the conversation. We can readily agree that Lopez, who had been arrested and who was in the custody of the police and being driven to jail, would be in a more uncomfortable situation than would a person in that same situation whose first language was English. However, we conclude that, under the facts of this case, Lopez's alleged language difficulty is just one factor to be considered in determining the issue of voluntariness. *See State v. Riley*, 17 Wn. App. 732, 735, 565 P.2d 105 (1977) (whether a confession is free and voluntary is determined by whether it was extracted by any sort of threats, violence, or direct or implied promises, howeverslight; these factors take on added weight where other factors such as age or lesser intelligence are present), *review denied*, 89 Wn.2d 1014 (1978). Here, there is no evidence whatsoever of any sort of threats, violence or direct orimpliedpromise, however

slight. Moreover, there was evidence that Lopez, his denial notwithstanding, understood enough English to converse intelligently with Officer Larson. Judge Knight did not err in admitting the prior statements for impeachment purposes.

*Miranda* is a judge-made exclusionary rule, designed to protect constitutional rights by discouraging overly enthusiastic or even illegal interrogation methods. *Miranda* was not designed as a blanket rule guaranteeing a defendant the right to testify falsely, free from the risk of confrontation with a prior inconsistent statement. *Riddell v. Rhay*, 79 Wn.2d at 252-53. We hold that the impeachment *value* of Lopez's statement, in view of Lopez's testimony that he did not understand Officer Larson's questions, was properly left for the jury to determine.

Finding no error we affirm.

A majority of this panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

GROSSE and BAKER, JJ., concur.

Review denied at 125 Wn. 2d 1004 (1994).