[No. 34190-1-I.    Division One.    September 18, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. TODD E. DAVIS, *Respondent*.

*James H. Krider, Prosecuting Attorney*, and *Edward E. Stemler, Deputy*, for appellant.

*Mark D. Mestel* and *Mestel & Muenster*, for respondent.

ELLINGTON, J. — The State of Washington appeals an order granting Todd Davis's motion to suppress evidence, arguing that (1) the police had probable cause to arrest Davis, and, hence, the cocaine and marijuana found by the police were discovered during a valid search incident to arrest; (2) if the search was a valid search incident to arrest, whether or not Davis consented to the search is irrelevant; and (3) even if the search was not a valid search incident to arrest, Davis voluntarily consented to a limited search. Davis now concedes that the police had probable cause to arrest him for possession of marijuana prior to the search. In response to Davis's concession, the State argues that (1) because Davis did not cross-appeal, he may not argue that an alternative basis supports the trial court's suppression of the evidence; and (2) the search of the cooler in the cargo area of the vehicle was a valid search incident to arrest. We reverse the trial court's suppression order and remand the case for trial.

On February 26, 1992, Snohomish County Sheriff's Detective Robert Palmer, who was assigned to the narcotics unit, encountered Davis at a gas station convenience store. Davis smelled so strongly of marijuana that Palmer at first thought Davis was carrying a lighted marijuana cigarette. Palmer returned to the parking area and expressed concern to Deputy Michael Thompson that Davis might be driving while intoxicated. He suggested that Thompson, who was in uniform, should talk to Davis.

When Davis left the store, Palmer and Thompson confronted him at the front of his vehicle, a Chevrolet Suburban.[1] Both Palmer and Thompson could smell marijuana through an open window. Thompson told Davis they could smell marijuana on him, and Davis acknowledged he had recently smoked some marijuana. Thompson asked Davis if he could search the vehicle, but Davis refused his consent.

---

[1] A Chevrolet Suburban is a "very large", "enclosed truck type four wheel drive vehicle, four-door, with a rear compartment and hatchback."

Palmer identified himself as an undercover officer, mentioned that he smelled marijuana coming from the Suburban, and asked Davis if there were more drugs inside. Davis acknowledged he had smoked some marijuana in the vehicle and said there were some roaches (burnt ends of marijuana cigarettes) in the ashtray. Palmer then asked if he could search the vehicle, but Davis again denied his consent. However, when Palmer asked if he could simply retrieve the roaches from the ashtray, Davis responded affirmatively. Palmer opened the door and immediately noticed a large wad of cash in the pocket on the door.

After retrieving the roaches, Palmer seized marijuana in plain view on the center console. The officers then arrested Davis. Davis was handcuffed, taken to a police vehicle, and given his Miranda warnings.

After Davis was arrested, Palmer and Thompson searched the Suburban. The rear bench passenger seat was folded down, so that the entire area behind the front passenger seat was a flat, cargo area. Inside a cooler behind the driver's seat, Thompson found an electronic scale, paper bindles used for packaging cocaine, two baggies filled with a white powder that field-tested positive for cocaine, a metal spoon, and a small strainer.

Davis was charged by information on July 7, 1992, with possession of a controlled substance with intent to manufacture or deliver, in violation of RCW 69.50.401(a). On a CrR 3.6 motion to suppress the items seized from the Suburban, the trial court ruled orally that the officers did not have probable cause to arrest Davis for possession of marijuana based only upon the smell of marijuana, but that Davis consented to a search to retrieve the roaches, and once the roaches and marijuana were found, the officers had probable cause to arrest Davis. The court then ruled that the search of the entire passenger area was a valid search incident to arrest.

Davis asked the court to reconsider its ruling and offered to provide additional authority on the issue of

consent. Upon reconsideration, the court held that Davis had acquiesced, but had not consented to the search and, therefore, the evidence was seized unlawfully. The court, therefore, granted the motion to suppress the evidence.

In its findings and conclusions for the CrR 3.6 hearing, the court concluded that (1) Davis's initial detention was lawful based upon the odor of marijuana; (2) Davis acquiesced, but did not consent to the search of the Suburban; (3) Palmer's search of the passenger area could not be validated as a search incident to arrest under *State v. Brantigan*, 59 Wn. App. 481, 798 P.2d 1176 (1990), but if there had been a valid arrest, the search conducted was within the scope of a search incident to arrest under *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986); and (4) because Palmer's initial entry into the Suburban was not lawful, the subsequent search incident to arrest was illegal and the evidence therefore must be suppressed. The State appeals.

Davis now concedes the police had probable cause to arrest him for possession of marijuana prior to the search, but argues that the suppression order was correct because the search exceeded the scope of a lawful search incident to arrest.

The State first argues that this court should disregard Davis's argument that the search exceeded the scope of a lawful search incident to arrest because Davis did not cross-appeal or assign error to the trial court's conclusion that if the arrest was valid, the search was valid. We disagree.

█ Under RAP 2.4(b),

[t]he appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review.

The State acknowledges that appellate courts ordinarily will affirm a correct ruling, even if it was made for incor-

rect reasons, if the evidence supports the ruling. However, relying upon *State v. Greve*, 67 Wn. App. 166, 834 P.2d 656 (1992), *review denied*, 121 Wn.2d 1005 (1993), the State argues that if the issue being argued does not naturally flow from other issues being addressed on appeal, the issue may not be reviewed on appeal.

In *Greve*, the trial court had suppressed statements the defendant had made, but ruled that they were admissible for impeachment purposes. On appeal, Greve argued that the statements should not have been admitted for impeachment purposes. The State responded that the statements were not tainted and should not have been suppressed for any reason. The appellate court held, however, that because the State had not cross-appealed the trial court's ruling that the statements be suppressed and the suppression issue did not "naturally flow" from the other issues being addressed on appeal, the trial court's ruling suppressing the evidence was the law of the case, which could not be reviewed.[2] *Greve*, 67 Wn. App. at 172 n.3.

The case before this court is distinguishable from *Greve*. In *Greve*, the issue on appeal was whether the trial court properly admitted previously suppressed statements for impeachment purposes only. The State responded that the statements should not have been suppressed for any reason.

In this case, the issue is whether the trial court erred when it suppressed the evidence seized during the search of Davis's vehicle. Davis argues that the evidence was properly suppressed because the search exceeded the scope of a search incident to arrest. The issue "naturally flows" from the other issues being considered. *See Greve*, 67 Wn. App. at 172 n.3. Additionally, Davis argued below that

---

[2]The State had failed to appeal the trial court's original order suppressing the statements. *See Greve*, 67 Wn. App. at 172 n.3. Apparently, the original order was separate from the order in which the court held that the statements were admissible for impeachment purposes. In this case, the order that the State claims Davis should have cross-appealed is the same order being considered on appeal.

the scope of the search was excessive, thus preserving the issue for review.

Furthermore, under RAP 2.4(b), this court should review an order or ruling not designated in the notice of appeal if it prejudicially affects the decision designated in the notice.[3] The trial court's ruling that, if there had been a valid arrest, the search was within the scope of a search incident to arrest under *Stroud*, prejudicially affects the decision designated in the notice of appeal in this case. This court, therefore, will consider Davis's argument.

Therefore, the next issue is whether the trial court erred when it concluded that if there was a valid arrest, the search was valid under *Stroud*. *Stroud* established a bright line standard to determine if a warrantless automobile search meets state constitutional requirements. *See State v. Boyce*, 52 Wn. App. 274, 277, 758 P.2d 1017 (1988). The *Stroud* court held as follows:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

*Stroud*, 106 Wn.2d at 152. The court distinguished locked compartments from other areas because a locked container expresses a higher expectation of privacy and would be more difficult to access to destroy evidence or reach a weapon. *Stroud*, 106 Wn.2d at 152.

■ Davis claims that the evidence suppressed in this case was found in the "cargo/trunk area" of the vehicle and argues that the *Stroud* rule for passenger compartments "does not encompass the [functional equivalent of the] trunk," Br. of Resp't at 8, quoting *New York v. Bel-*

---

[3]The order on the defendant's motion to suppress evidence from which the State appealed does not state a basis for the decision. Rather, it says only that "the motion to suppress is granted."

*ton*, 453 U.S. 454, 460 n.4, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); and citing *Robbins v. California*, 453 U.S. 420, 447, 101 S. Ct. 2841, 69 L. Ed. 2d 744 (1981) (Stevens, J., dissenting), *overruled by United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). Although various federal cases hold that the passenger compartment does not include the "functional equivalent of the trunk," Davis's reliance upon the federal cases and a Vermont case is misplaced. The cases Davis cites do not involve situations comparable to that found in this case. For example, *Robbins* involved a search of the recessed luggage compartment of a station wagon, which was reached by opening the tailgate and lifting a handle set flush in the deck. In the Vermont case, bags containing contraband were found in a hatchback area reached by unlatching an unlocked vinyl cover from inside the back-seat.[4] *State v. Savva*, 159 Vt. 75, 616 A.2d 774, 783 (1991). In this case, the unlocked cooler from which the cocaine was seized was found behind the driver's seat.[5]

Davis notes that the rule in *Stroud* was based on a need to allow officers to search areas within the arrestee's immediate control. He argues that because one must spend time to retrieve items from a container in a rear cargo area, the evidence seized in this case falls outside of the scope of the " 'search incident to arrest' rationale." Br. of Resp't at 9.

However, as the court said in *Boyce*, the area within the arrestee's immediate control includes the passenger compartment of a vehicle, because the area generally, though not inevitably, is one from which the arrestee could grab a weapon or other evidence. *Boyce*, 52 Wn. App.

---

[4]The *Savva* court addressed only whether the officer was allowed to open bags found inside the hatchback. *Savva*, 616 A.2d at 783. The trial court had found that the hatchback was not part of the vehicle's passenger compartment, and the State apparently did not assign error to that finding. *See Savva*, 616 A.2d at 783.

[5]Although it is unclear from the record exactly where Officer Thompson found the cooler, the trial court found that it was behind the driver's seat, and Davis did not assign error to this finding.

at 277. To find that folding down seats in a vehicle converts the space from a passenger area to "the functional equivalent of a trunk" would defeat the purpose of the *Stroud* rule, which was intended "to create an easily applied 'reasonable balance' between the need for effective police enforcement and the protection of individual rights." *Boyce*, 52 Wn. App. at 277 (citing *Stroud*, 106 Wn.2d at 152); *see also State v. Johnson*, 77 Wn. App. 441, 447, 892 P.2d 106 (1995).

Because the unlocked cooler was found in the passenger compartment of the vehicle, it should have been admitted as the fruit of a lawful search incident to arrest. The trial court's order suppressing the evidence, therefore, is reversed, and the case is remanded for trial.[6]

BAKER, C.J., and AGID, J., concur.

Reconsideration denied October 20, 1995.

---

[6]The State also argues that the trial court erred when it concluded that Davis did not consent to the search. Because the evidence was lawfully seized pursuant to a search incident to arrest, this court need not address whether Davis consented to the search. Nevertheless, the court concludes that Davis's consent to the search was voluntary, not coerced. The record reflects that although Davis may have felt cornered and may not have believed that he was free to leave, the officers persuaded, rather than coerced, Davis to allow them to search the ashtray to retrieve the ends of marijuana cigarettes that he had admitted were there. *See State v. Nelson*, 47 Wn. App. 157, 163, 734 P.2d 516 (1987) (though faced with a "Hobson's choice," bowing to events is not the same as being coerced, even if one does not like the choices).