IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 74538-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SAID FARZAD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 20, 2017 |
| | ) | |

BECKER, J. — Said Farzad appeals his conviction for telephone harassment. Because the jury instructions allowed a conviction for uncharged conduct, we reverse.

Police received complaints on May 5, 2014, that a man had called Molina Insurance and threatened to shoot employees and bomb the facility. The caller was identified as Said Farzad.

Police contacted Farzad the next day. He was advised of his Miranda[1] rights and agreed to waive them. During questioning, Farzad explained that he is a psychiatrist and Molina insures some of his patients. He said that Molina often refused to cover medications needed by his patients, and he regularly contacted the company regarding this issue.

_____

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Farzad told police that on May 5, he made one phone call to Molina after learning that a patient had been denied coverage for a medication. He told them his call was transferred several times and his requests to speak with the medical director were denied. He admitted that at one point, he told a Molina employee that a patient who was denied appropriate medication might, theoretically, bring a gun to Molina and commit a shooting. The interviewing officers confronted Farzad with the fact that Molina employees had reported receiving phone calls from someone who threatened to commit a shooting or bombing. Farzad denied that he had done so.

At the end of questioning, Farzad allowed police to look at his phone. According to police testimony, the phone showed five calls to Molina on May 5. Farzad expressed surprise that he had made "all those calls."

Soon after, the Medical Quality Assurance Commission issued a statement of charges alleging that Farzad violated professional standards. The charges were based in part on his alleged threats towards Molina employees. The Department of Health suspended his medical license pending further proceedings by the commission.

Farzad received a notice that a Department of Health hearing would occur on July 30, 2014, to determine whether he violated statutes and regulations as alleged in the statement of charges. The notice stated, "Parties who fail to attend or participate in a hearing or other stage of an adjudicative proceeding may be held in default in accordance with RCW 34.05.440." Farzad attended the hearing

and represented himself. He answered questions asked by the adjudicative panel. His license to practice was ultimately revoked.

In September 2014, the State charged Farzad with one count of felony telephone harassment, allegedly directed against Lisa Tyler and Kim Tran, two of the Molina employees who originally reported that Farzad made threatening calls. The charges were later amended to include a count of threats to bomb or injure property.

At a 3.5 hearing, the trial court considered the admissibility of Farzad's statements from the Department of Health hearing. The court did not have a record of that hearing. The issue posed was generic in nature. The court deemed the statements admissible for impeachment purposes, should Farzad testify at trial.

During a jury trial, the State called Tyler and Tran as witnesses. They testified that they received threatening phone calls from Farzad on the day in question. Michelle Raymond, another Molina employee, also testified that she received a threatening call from Farzad on that day. These calls were not recorded, so the testimony of the employees was necessary to the State's proof. Farzad did not testify.

Regarding count 1, the jury was instructed on felony telephone harassment and the lesser included offense of misdemeanor telephone harassment. The jury found Farzad guilty of the lesser offense. The jury deadlocked on count 2, threats to bomb or injure property. The court declared a mistrial with respect to that charge. Farzad was sentenced to a 364-day

3

sentence, suspended for 2 years on the conditions that he obtain a mental health evaluation and participate in an anger management program. He appeals.

We first address Farzad's contention that the trial court erred when it ruled that his statements from the disciplinary hearing were admissible as impeachment evidence. Farzad argues that this ruling violated his Fifth Amendment right not to testify against himself.

Farzad did not testify at trial, and his statements from the disciplinary hearing were therefore not introduced. The State asserts that because Farzad did not testify at trial, he is precluded from arguing on appeal that his Fifth Amendment right was violated.

In Washington, a defendant need not testify in order to preserve an alleged violation of the right to remain silent. State v. Greve, 67 Wn. App. 166, 169-70, 834 P.2d 656 (1992), review denied, 121 Wn.2d 1005 (1993); State v. Borsheim, 140 Wn. App. 357, 371 n.5, 165 P.3d 417 (2007). We decline the State's request to reconsider the holdings in Greve and Borsheim.

A criminal defendant may not be compelled to testify against himself. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The general rule is that the privilege against self-incrimination is not self-executing; it must be affirmatively invoked. State v. Post, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992); see also Alsager v. Bd. of Osteopathic Med. & Surgery, 196 Wn. App. 653, 669, 384 P.3d 641 (2016). Farzad admits that he did not invoke the Fifth Amendment privilege at the disciplinary hearing. He argues that the "penalty exception" excuses his failure to do so. Under that exception, the right to remain silent is self-executing

4

in situations where the State makes a threat, express or implied, that exercise of the privilege not to make incriminating statements will result in a penalty, either economic loss or deprivation of liberty. Post, 118 Wn.2d at 610. Farzad asserts that he was threatened with the penalty of losing his medical license if he exercised his privilege against self-incrimination at the disciplinary hearing.

The notice of hearing provided to Farzad cites RCW 34.05.440, a statute that authorizes a hearing officer to enter a default "or other dispositive order" if a party fails to "attend or participate" in a hearing. Potential outcomes of the hearing included revocation of Farzad's license. RCW 18.130.160. The notice implied that if Farzad failed to "attend or participate" in the hearing, he would face an order of default that revoked his license.

Threatened career consequences can constitute a penalty. Spevack v. Klein, 385 U.S. 511, 516, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967); Garrity v. New Jersey, 385 U.S. 493, 495, 500, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967); Alsager, 196 Wn. App. at 662 n.3. The defendants in Spevack and Garrity were threatened with loss of their jobs if they refused to testify or answer questions. In other words, these defendants were coerced to make statements. Farzad was not. He cites no authority for the proposition that the privilege against self-incrimination is eroded by requiring a person to attend and participate in a hearing. He does not show that as a matter of law, it is impossible to participate in a hearing without making a self-incriminating statement. And because no record of the disciplinary hearing was submitted to the trial court or to this court,

he cannot show as a matter of fact that he was coerced into making any statement.

The notice provided to Farzad did not require that he testify or answer questions. When asked during the 3.5 hearing whether he "chose to testify" in the disciplinary hearing, Farzad responded, "I wanted to clarify everything, because I thought that everything needs clarification." So far as the record reveals, Farzad could have asserted his Fifth Amendment right to remain silent if he had been questioned during the disciplinary hearing. Instead, he testified and answered questions voluntarily. Because he has not shown that he was threatened with loss of his license if he exercised the privilege against self-incrimination at the disciplinary hearing, the penalty exception to the general rule that the Fifth Amendment privilege is not self-executing does not apply. Farzad's failure to invoke the privilege at the disciplinary hearing is fatal to his Fifth Amendment claim.

Farzad next assigns error to the to-convict instructions on telephone harassment, arguing that they allowed the jury to convict him of an uncharged offense. He did not object to the instructions at trial.

A defendant is entitled to notice of the charges he will face at trial and cannot be tried for a crime not charged. State v. Jain, 151 Wn. App. 117, 124, 210 P.3d 1061 (2009), citing State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

6

Here, the information alleged that Farzad, "with intent to harass, intimidate, torment, and embarrass Lisa Tyler and/or Kim Tran, did make a telephone call to that person threatening to kill any person."

The felony to-convict instruction did not mention Tyler or Tran. It required the State to prove "(1) That on or about the 5th day of May, 2014, the defendant made a telephone call to *another person*; (2) That at the time the defendant initiated the phone call the defendant intended to harass, intimidate, torment, or embarrass that *other person*; (3) That the defendant threatened to kill *the person called*." (Emphasis added.)

Similarly, the misdemeanor to-convict instruction required the State to prove "(1) That on or about the 5th day of May, 2014, the defendant made a telephone call to *another person*; (2) That at the time the defendant initiated the phone call the defendant intended to harass, intimidate, torment, or embarrass that *other person*; (3) That the defendant threatened to inflict injury on *the person called*." (Emphasis added.)

The jury considered evidence that Farzad threatened not only Tyler and Tran, but also Raymond. Thus, given the available evidence, the instructions allowed a conviction based on uncharged conduct—Farzad's call to Raymond.

Jain is analogous. There, the defendant was charged with money laundering in connection with two properties specifically identified in the information. Jain, 151 Wn. App. at 121-23. The trial court admitted evidence regarding five additional properties. Jain, 151 Wn. App. at 123. The to-convict

7

instruction did not limit the jury's consideration to the properties identified in the information. Jain, 151 Wn. App. at 123.

On appeal, we accepted the State's concession that the to-convict instruction was defective. We explained, "the jury in this case could have returned a guilty verdict by finding that Jain committed acts not charged in the information . . . . The State properly concedes that it violated Jain's right to notice and a fair opportunity to present a defense." Jain, 151 Wn. App. at 124.

Under Jain, the instructions given in this case were erroneous, and the State conceded as much in oral argument before this court. We reject the State's argument that the error may not be raised for the first time on appeal. The error was constitutional because the defective instructions impacted Farzad's constitutional right to notice and the opportunity to present a defense. The error was manifest, RAP 2.5(a), because the mismatch between the information and the to-convict instructions was "obvious on the record." State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009).

The State argues that the error was harmless. "An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears that the error was harmless." Jain, 151 Wn. App. at 121, citing State v. Brown, 45 Wn. App. 571, 576, 726 P.2d 60 (1986). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." Jain, 151 Wn. App. at 121-22, citing State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

8

The to-convict instructions required proof that Farzad threatened to kill or inflict injury on "the person called." The jury had evidence of threatening calls to Tyler, Tran, and Raymond. The instructions and the verdict form did not limit the jury's consideration to the charged crimes against Tyler and Tran or require the jury to agree on who was "the person called." During closing arguments, neither the State nor Farzad attempted to limit the jury's consideration to any specific recipient of a call. On this record, it is not clear beyond a reasonable doubt that the jury would have reached the same result if the instructions were not defective. We therefore conclude that the error was not harmless and requires reversal.

Because we reverse on this issue, we need not address the State's request for appellate costs.

Reversed.

Becker, J.

WE CONCUR:

Dwyer, J.

Cox, J.