[No. 30451. Department One. September 23, 1948.]

DONALD E. BARKER, *Respondent*, v. PHYLLIS BARKER, *Appellant*.[1]

*Guy E. Dunning*, for appellant.

*Cowan, Haugan & Holmes*, for respondent.

SCHWELLENBACH, J.—At about eleven-thirty in the morning, on May 2, 1942, Phyllis Peterson arrived in Tacoma, from Bellingham, with an aunt, and with the purpose of being a witness to her aunt's marriage to a soldier. The aunt's fiancé arrived from Fort Lewis about seven o'clock that evening, accompanied by another soldier, one Herman W. Schuessler, who was to be his buddy's witness. Miss Peterson had previously met Schuessler in Bellingham. By

[1] Reported in 197 P. (2d) 439.

nine o'clock, Schuessler and Miss Peterson had obtained a marriage license and a three-day waiver, and both couples were married by a justice of the peace. About midnight, some MP's picked up both of the soldiers, and they were taken back to camp and shipped to Alaska.

A couple of months later, while working in Seattle, Phyllis Schuessler was introduced to a man named Johnston, who claimed to be a lawyer from Everett. Johnston did not maintain an office in Seattle. His headquarters were in the Ben Paris Recreation establishment. He called her down there and asked her some questions, and then informed her that he could get her an annulment for seventy-five dollars. She gave him the money, and three months later received a brown paper from him which said: "You are now informed that you are free to marry again," that "you have an annulment." Later she met Barker, and they were married in Coeur d'Alene, Idaho, on November 7, 1942. A child, Barbara Jean Barker, was born July 13, 1943, as the issue of this marriage.

At the time of the wedding, both she and Barker thought, in good faith, that she was free to marry. Later, some question arose as to the validity of this marriage. Upon investigation, it developed that no attorney named Johnston was registered in Everett, so she commenced divorce proceedings against Schuessler, intending to remarry Barker. The final decree was entered December 21, 1945. In the meantime, trouble arose between the parties, and she decided not to remarry him. As a result, on November 5, 1945, the plaintiff commenced this action for annulment, asking for custody of the child. In her answer, defendant asked for custody of the child.

The difficulties between the parties arose in this manner. One evening they went to a dance where beer was served. She was dancing with a sailor, and everybody except her and the sailor had left the floor. They remained in the center of the floor kissing each other. (She testified that it was against her will.) At any rate, the plaintiff did not like this performance. He picked her up and carried her

to the car. She continually remonstrated and tried to get away. When they got home, the quarrel continued, and he pushed her around. They made so much noise that the neighbors called in the police and he was arrested.

The trial court annulled the purported marriage of the plaintiff and defendant; held that the defendant was a proper person to have the custody of the child, and awarded its custody to her

". . . until the further order of the court, but with reasonable rights of visitation to the plaintiff as follows: the right to have the said child with him once a month, on the second week-end thereof, from Friday evening at 6 P. M. until the following Sunday to be returned by him at 7 P. M., and that he should have the child visit him during summer vacations for at least one month in August. That the plaintiff should also be allowed to have said child on alternate holidays; his first right to have her will be at the Christmas holidays from 5 o'clock December 24, 1947 to 7 o'clock P. M. December 25, 1947; defendant to have her on Thanksgiving 1947 and New Year 1948; thereafter to alternate as above indicated on the holidays of Easter, July 4th, Thanksgiving, Christmas and New Year, defendant to have said child on July 4th, Thanksgiving, 1947 and New Year 1948."

Defendant has appealed from those portions of the decree in which the court assumes the jurisdiction of the minor child and limits defendant's custody "until further order of the court," and awards rights of visitation to plaintiff and the right to have the child with him once a month and to have her during August of each year and on certain holidays.

Rem. Rev. Stat., § 983 [P.P.C. § 23-5], provides:

"When there is any doubt as to the facts rendering a marriage void, either party may apply for, and on proof obtained, a decree of nullity of marriage."

Rem. Rev. Stat., § 8438 [P.P.C. § 733-41], provides in part:

"Marriages in the following cases are prohibited:
"1. When either party thereto has a wife or husband living at the time of such marriage."

We have held such marriages to be void *ab initio*. *Beyerle v. Bartsch*, 111 Wash. 287, 190 Pac. 239.

The only statute authorizing the court to make disposition of children, as between husband and wife, is Rem. Rev. Stat., § 989 [P.P.C. § 23-23], a part of the divorce code. Likewise, only the divorce code provides for modification of decrees of divorce. Rem. Rev. Stat., § 988 [P.P.C. § 23-15] (amended by chapter 161, p. 731, Laws of 1947, in matters not material to the question at issue); Rem. Rev. Stat., § 995-2 [P.P.C. § 23-33].

█ It is a well-recognized rule that in actions involving the custody of a child, the welfare of the child is of paramount importance, and this rule applies to illegitimate, as well as legitimate, children. 7 Am. Jur. 668, Bastards, § 60.

*Peterson v. Peterson*, 164 Wash. 573, 3 P. (2d) 1007, was an action for divorce and the custody of a minor child, brought by the husband. The wife filed a cross-complaint, asking for annulment. A decree of annulment was entered. The custody of the child was awarded to the mother, and the father was ordered to pay the wife twenty dollars per month for the support of the child, until further order of the court. The husband appealed, contending that he could not be ordered, in an annulment decree, to pay for the support of the child. The decision discusses the matter so thoroughly that we quote at length.

"Rem. Comp. Stat., § 989, is a general provision to the effect that, in granting a divorce, the court shall, among other things, make provision for the support and education of the minor children; and, under the facts in this case, the appellant having commenced the action and first presented to the court the subject matter of the custody and support of the child, we have no doubt of the authority of the court to make the order.

"To the same effect is the holding of the supreme court of California, under similar circumstances, in *Barrett v. Barrett*, 210 Cal. 559, 292 Pac. 622. California has a statute for annulment of marriage and another for divorce, Civil Code, § 82 and § 138, just as we have in this state, Rem. Comp. Stat., §§ 983 and 982. In the case of *Barrett v. Barrett, supra*, the supreme court of California, in entering a decree of annulment of a marriage, awarded a minor child

to the father, and thereafter, upon the petition of the mother, modified the decree by giving the custody of the child to the mother and directing the father to pay twenty dollars a month for its support. In affirming the last order, the supreme court called attention to an act of the legislature of 1929 setting at rest any question about the power and authority of the courts to make such orders under provisions of the general statute already existing, Civil Code of California, § 138, which reads:

" 'In actions for divorce the court may, during the pendency of the action, or at .the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same.'

"The modified decree that was complained of in that case was entered prior to the act of 1929 referred to, so that the court, discussing the situation independently of that act, and from the standpoint of the general provision consisting of § 138, which section does not in terms refer to annulment proceedings, but only divorce actions, said:

" 'Section 138, however, providing for the custody and support of minor children is appropriate, and may be applied as well to annulment proceedings as to divorce actions, and the legislative intention undoubtedly was that it should have such application, for not until the year 1929 did the legislature provide by separate and independent enactment for the custody and maintenance of minor children affected by annulment proceedings.'

"Still further, the supreme court of California said that it was only reasonable to conclude that, prior to the 1929 amendment, it was the legislative intention that, in so far as the custody of minor children was concerned,

" '. . . section 138, *supra*, should govern both annulment and divorce proceedings. Any other conclusion would result in an unwarranted distinction and discrimination.'

"In such cases, not only under the statute but under the inherent jurisdiction or authority of courts of equity with reference to the custody of minor children, large power and discretion are given to the superior court, which will not be disturbed on appeal unless it clearly appears such discretion has been abused. Nothing in the way of abuse of discretion or authority appears in this case."

■ We consider the above case controlling, and hold that, in an annulment proceeding where an invalid marriage has been entered into in good faith by the parties, and, as a result of such invalid marriage, a child or children are born, the court has inherent jurisdiction or authority to make proper provision for the custody and maintenance of such child or children.

Having decided that the court had authority to make the order complained of, it is unquestioned that such authority continues during the minority of the child.

■ Appellant contends that, in any event, the court was in error in granting custody of the child to respondent on certain week ends and holidays. The testimony showed that, in the home of respondent's parents, where the child would be taken on these occasions, a young boy had been permitted to drink beer, bad language was used, and poker games were indulged in. Respondent's parents live on a small farm near Castle Rock. A neighbor testified that it was a good home. The record is replete with charges and countercharges which usually "crop up" in cases involving family disputes.

We are satisfied that the trial judge, who had all of the parties and witnesses before him, and upon whom devolved the responsibility of the future welfare of the child, would not have permitted the child to be in such surroundings, if he had not been convinced that the home of respondent's parents was entirely proper. We find no abuse of discretion on his part.

The decree is affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.