[No. 13435-1-III. Division Three. July 13, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v.
LAWRENCE ARNOLD DENISON, *Appellant*.

*Paul J. Wasson*, for appellant.

*David M. Sandhaus, Prosecuting Attorney*, and *Gayle M. Petrusic, Deputy Prosecutor*, for respondent.

MUNSON, J. — Lawrence A. Denison appeals his conviction on one count of first-degree theft, three counts of second-degree theft, and one count of third-degree theft. He contends (1) the evidence was insufficient to support the finding of guilt, (2) the convictions should be reversed and dismissed because the required findings of fact and conclusions of law were never entered, (3) the trial court erred in refusing to dismiss the case for speedy trial violations, and (4) he received ineffective assistance of counsel at trial. Because we cannot review all of Mr. Denison's contentions without findings of fact, we vacate the judgment and sentence, remand for entry of findings of fact and conclusions of law and judgment based thereon.

In late winter of 1989, Mr. Denison moved to Adams County and went to work for Martin and Ronald Gering

on their farms. Mr. Denison represented himself to the Gerings as a rich man who had come to Adams County on a bet that he could live as a "commoner". Mr. Denison told people he owned airplanes, yachts, pallet mills, and photo stores. He always seemed to have a lot of cash to "flash" around. One of the terms of Mr. Denison's employment with the Gerings was that he be paid in goods or services, not money. He was provided with a house, appliances, and a vehicle; his food and utility bills were paid for him. He was also paid with household furnishings, electronic equipment, and a hot tub.

Mr. Denison was quite skilled and began to advise the Gerings as to operations of the farms. In June 1990, Mr. Denison aided Ron Gering in forming Cascade Irrigation, a sole proprietorship, to sell irrigation circles. Mr. Denison was to be a "silent partner" in the venture in that he did not invest in the business, but was to maintain the books and provide management skills. In October 1990, they began procedures to incorporate the business, but never completed the process. In December, Robert Schuh became an investor. At that time, Ron Gering, Mr. Schuh, and Mr. Denison each agreed to invest $10,000 in the company. They also agreed that no money was to be used for personal expenses nor were wages or profits to be taken out of the company. Ron Gering later learned Mr. Denison was using the company checking account to pay for some personal expenses but did not object because Mr. Denison assured him he had invested between $60,000 and $100,000 in the company. Mr. Denison rebuffed attempts by Ron Gering and Mr. Schuh to see the books.

On July 31, 1991, when sheriff's deputies attempted to serve him with two unrelated arrest warrants, Mr. Denison fled to Oregon. It is unclear from the record if Mr. Denison actually invested any money in Cascade, but Ron Gering and Mr. Schuh determined there was only about $5,000 remaining in the bank account after Mr. Denison's flight. They discovered Mr. Denison had written several checks to purchase personal items or pay for personal ex-

penses. Included among those checks were one for a Polaris four-wheel all terrain vehicle, as well as payment of hospital and medical bills for the birth of his two children. Also, Mr. Denison had written a check on the company account for $250 cash the day he fled Adams County.

Mr. Denison was charged with two counts of first-degree theft and ten counts of second-degree theft. He waived his right to a jury trial and was tried to the court. At the conclusion of the trial, the court found Mr. Denison not guilty on one count of first-degree theft and six counts of second-degree theft. He was found guilty of one count of first-degree theft and three counts of second-degree theft, all felonies, and one count of third-degree theft, a gross misdemeanor. RCW 9A.56.030(2), .040(2), .050(2). Mr. Denison was sentenced to a term of 18 months in a state institution for the felonies with a consecutive sentence of 12 months in the county jail for the gross misdemeanor.[1]

 We first discuss Mr. Denison's contentions relating to the sufficiency of the evidence and the failure to enter findings of fact. He first contends the evidence is insufficient to support the trial court's finding of guilt. The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence most favorably to the State, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). In criminal cases tried to the court without a jury, the court is required to enter written findings of fact and conclusions of law. CrR 6.1(d). Those findings should address the elements of the crimes separately and indicate the factual basis for each. *State v. Russell*, 68 Wn.2d 748, 415 P.2d 503 (1966). In the absence of the required findings, this court cannot review an assignment of error which requires consideration of whether there was sufficient evidence to support such findings. *Russell*,

---

[1]Mr. Denison has served his sentence for the felonies. He was permitted to post bail during this appeal and has not served his sentence of 12 months in the county jail.

68 Wn.2d at 751. Here, the record on appeal does not contain either findings of fact or conclusions of law, and the State concedes none have been filed. Consequently, we cannot determine whether the evidence was sufficient to support Mr. Denison's conviction.

Mr. Denison next contends the proper remedy for failure to file findings of fact and conclusions of law is reversal of his conviction and dismissal of the charges. At the conclusion of the trial, the court gave its oral opinion and immediately sentenced Mr. Denison. The court informed Mr. Denison that the "prosecutor will prepare the findings of fact, conclusions of law upon which this judgment is based", and that his attorney would have a chance to review them before they were entered by the court. The deputy prosecuting attorney who had tried the case acknowledged the State would prepare the findings of fact and conclusions of law. In its brief, the State indicates the findings were prepared, but not submitted to the trial court for over six months after judgment was entered. The State maintains this was solely due to the neglect of the former prosecuting attorney. When the findings were finally presented to the trial court, the court refused to enter them because Mr. Denison had already initiated his appeal. Thus, the appeal comes before us with assignments of error but without findings of fact or conclusions of law.

It appears this procedural quagmire arose because the deputy prosecutor at trial was relatively new and the prosecuting attorney wanted to review the findings of fact and conclusion of law. We do not know why they laid on the prosecuting attorney's desk for six months, but the deputy prosecuting attorney stated at oral argument that she was concerned about the continuation of her employment if she were to retrieve them without her employer's approval. The morning after he left office, she retrieved them and they were ultimately presented to the trial judge, who refused to sign them.

The proper procedure, should such an occasion arise again, would be for the deputy prosecutor to seek in this

court an order requiring the trial judge to enter findings of fact and conclusions of law.[2] Here, the judgment and sentence was entered prior to the entry of findings of fact and conclusions of law; thus, the time for filing an appeal began with entry of the judgment. RAP 5.2(a). RAP 18.8 provides an appellate court may, on motion of a party, waive or alter the provisions of any rules in order to serve the ends of justice; the schedule for the appeal could have been adjusted accordingly. Now, we have gone through the entire process of an appeal without findings of fact and conclusions of law, which we must have in order to review the assignment of error relating to the sufficiency of the evidence.

In *Russell*, the court dealt with an appeal in which no findings of fact or conclusions of law had been entered. *See also State v. Jones*, 34 Wn. App. 848, 664 P.2d 12 (1983). The court determined the appropriate remedy was to vacate the judgment and sentence and remand for the entry of the findings of fact and conclusions of law. *Russell*, 68 Wn.2d at 755-56. More recently, several juvenile cases have discussed the problems in allowing the State to enter findings of fact and conclusions of law after the appellant's brief has been filed.[3] *See, e.g., State v. Royal*, 122 Wn.2d 413, 858 P.2d 259 (1993); *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984). While those problems also exist in adult criminal cases, the trial court's oral decision in this case was so specific that we cannot imagine any difficulty in drafting those documents. If the trial court needs to refresh its memory, the record of its oral opinion is available. Therefore, we decline to dismiss, but do vacate the judgment and sentence and remand for entry of findings of fact and conclusions of law. If Mr. Denison is found guilty, an appropriate sentence should be imposed with credit for

[2]We recognize after some amount of time the trial court may not remember the case well enough to determine if the findings presented represent its determination of the case.

[3]In contrast to JuCR 7.11(d), CrR 6.1(d) does not have a time requirement for the entry of findings of fact and conclusions of law.

time served. Should either party feel aggrieved by the findings of fact or conclusions of law, it may appeal therefrom in the normal manner.

Mr. Denison also raised two issues which do not require findings of fact for their resolution. We choose to address those issues now rather than in a subsequent appeal. Mr. Denison contends the trial court erred in failing to dismiss the case because he was not brought to trial within the time limits of CrR 3.3. He was arraigned February 26, 1993, and trial was set for April 20, within the 60 days required by CrR 3.3. On April 20, the day set for trial, Mr. Denison moved for a continuance. Mr. Denison's counsel stated "the motion did not include a court date to have the matter reset because I wasn't aware of the court schedule and I wasn't aware what the procedures [were] in Adams County as to how a new court date[4] would be set". The court granted the continuance without setting a date for trial.

Under CrR 3.3(f)(2), the responsibility for ensuring a timely trial remains with the court. *State v. Lemley*, 64 Wn. App. 724, 730, 828 P.2d 587, *review denied*, 119 Wn.2d 1025 (1992). The granting of continuances is governed by CrR 3.3(h), and the period of a continuance is excluded from the speedy trial time limits. CrR 3.3(g)(3). Although the responsibility for ensuring a timely trial lies with the court, "[t]he ordinary rule . . . is that a defendant who asks for a continuance pursuant to CrR 3.3(h) simply will not be heard to later complain that he received what he asked for". *State v. Lopez*, 74 Wn. App. 264, 268, 872 P.2d 1131, *review denied*, 125 Wn.2d 1004 (1994). Here, when Mr. Denison requested an open-ended continuance, negotiations were being conducted for a possible plea agreement; he cannot now complain that his request was granted. The trial court did not err in denying his motion to dismiss.

Mr. Denison next contends he received ineffective assis-

---

[4]The only judge in Adams County was disqualified and the matter was to be heard by a visiting judge from Spokane County.

tance of counsel at his trial. His contention is based solely on the fact his attorney did not move to exclude the testimony of Tamara Denison as privileged under RCW 5.60.060(1).

■ RCW 5.60.060(1) states in part:

> A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage.

The privilege embodied in the statute consists of two parts. The first applies to an existing marriage; it prevents testimony by a spouse, without the consent of the nontestifying spouse, as to events before or during marriage. The second applies either during or after a marriage; a spouse, without the consent of the other, cannot be examined as to confidential communications made during the marriage. *State v. Thorne*, 43 Wn.2d 47, 55, 260 P.2d 331 (1953). The second part is not at issue here; Tamara Denison was not questioned and did not testify as to confidential communications made during their marriage.

■ The privilege applies only where there is a valid existing marriage. *State v. Cohen*, 19 Wn. App. 600, 608, 576 P.2d 933, *review denied*, 90 Wn.2d 1022 (1978). Here, Tamara Denison testified she married Mr. Denison after the events at issue in this case had occurred. She also testified she later learned he had been married previously and had not obtained a divorce before their marriage. If that is true, the marriage between Tamara and Mr. Denison was void ab initio. RCW 26.09.040(4)(b)(i); *Barker v. Barker*, 31 Wn.2d 506, 197 P.2d 439 (1948).

■ To prevail, a defendant alleging ineffective assistance of counsel must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). The defendant must show

counsel's performance was deficient, i.e., that it involved "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment". *Strickland*, 466 U.S. at 687; *Ray*, 116 Wn.2d at 548. The defendant must then show that the deficient performance by counsel prejudiced the defense; prejudice is defined as "errors . . . so serious as to deprive the defendant of a fair trial . . .". *Strickland*, 466 U.S. at 687; *Ray*, 116 Wn.2d at 548. Here, there is no indication why Mr. Denison's counsel did not attempt to assert the privilege. However, it makes no difference; Mr. Denison was not prejudiced by a failure to assert a privilege which did not apply.

We vacate the judgment and remand for the entry of findings of fact, conclusions of law, and a judgment based thereon. When the findings of fact and conclusions of law are presented to the trial court, Mr. Denison's trial counsel should participate. If there is to be an appeal, Mr. Denison's present counsel should be reappointed.

SCHULTHEIS, J., concurs.

SWEENEY, A.C.J. (concurring) — I agree with the conclusion reached by my colleagues regarding the failure of the court to enter findings of fact and conclusions of law. I write separately for two reasons. First, to expand upon what I think the dispositive question is—whether Lawrence Denison has shown prejudice as a result of the delay in entering findings and conclusions. And, second, to elaborate on the difference between the juvenile court rule governing this question (JuCR 7.11(d)) and the rule at issue here (CrR 6.1(d)).

CrR 6.1(d) provides in part that "[i]n a case tried without a jury, the court shall enter findings of fact and conclusions of law". The purpose of this requirement is to enable the appellate court to review the questions raised on appeal. *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984). Unlike JuCR 7.11(d), which sets forth a 21-day time period, CrR 6.1 has no time frame.

*State v. Russell*, 68 Wn.2d 748, 415 P.2d 503 (1966), relied upon by the majority, was decided prior to the April 18, 1973 adoption of CrR 6.1. That opinion did not address the issue of prejudice to the defendant.

More recent cases have involved juvenile cases in which the State has been allowed to submit findings of fact after the appellate process has begun. *State v. Royal*, 122 Wn.2d 413, 858 P.2d 259 (1993); *State v. Pena*, 65 Wn. App. 711, 829 P.2d 256 (1992) (findings entered 13 months after the notice of appeal filed and 8 months after opening brief filed).

In *Royal*, the notice of appeal was filed on October 18, 1990, but findings of fact were not entered until August 16, 1991. The defendant argued that he was prejudiced because the late filing caused unnecessary delay in the appellate process. *Royal*, 122 Wn.2d at 420. Noting that nothing in the appeal was dependent upon written findings of fact and conclusions of law, the court ruled that the defendant had to show that the delayed filing caused prejudice. *Royal*, 122 Wn.2d at 423. Here, Mr. Denison challenges the sufficiency of the evidence; the findings and conclusions are therefore relevant.

In *Pena*, this court discussed three juvenile decisions which addressed the issue, all of which involved prosecutorial fault as the reason for the delay. *State v. Charlie*, 62 Wn. App. 729, 815 P.2d 819 (1991); *State v. Bennett*, 62 Wn. App. 702, 710, 814 P.2d 1171 (1991), *review denied*, 118 Wn.2d 1017 (1992); *State v. Witherspoon*, 60 Wn. App. 569, 571-72, 805 P.2d 248 (1991). Rather than dismiss Mr. Pena's conviction, this court announced that in the future, when the violation occurs, the State would face a motion to reverse on the merits and dismissal of the case upon the filing of a notice of appeal. *Pena*, 65 Wn. App. at 714-15.

Division Two in *Witherspoon* reversed and dismissed a juvenile conviction when faced with a defendant in custody and a total noncompliance with JuCR 7.11(d). Although recognizing that remand might be an appropriate remedy in certain circumstances, the court determined

the defendant in *Witherspoon* would be prejudiced because (1) he was in custody, (2) the defendant would have to be afforded an opportunity to assign error to the findings, (3) the record may have to be supplemented, and (4) the court would be required to revisit the case to address all the assignments of error. *Witherspoon*, 60 Wn. App. at 572. Because this would all be done while the defendant continued his term of confinement, the court determined there was prejudice. The court in Witherspoon also recognized that the "practice of permitting findings to be entered after the appellant has framed the issues in his brief has an appearance of unfairness". *Witherspoon*, 60 Wn. App. at 572.

Although the State's failure to file findings in the instant case should not be condoned, the question is still whether Mr. Denison was necessarily prejudiced by the failure. The judgment and sentence entered on July 8, 1993, imposed a 30-month sentence. Mr. Denison's brief indicates he effectively served his prison time within one year—by June 1994. Even if the findings had been entered and an appeal pursued, Mr. Denison would likely have served the (shortened) sentence. His liberty interests were not therefore implicated by the failure to enter the findings here.

Second, and perhaps more significant, is his "appearance of unfairness" argument—the taint associated with findings drafted after the issues on appeal have been framed. It appears well settled, at least in the juvenile realm, that findings may be entered following the start of the appellate process and that the delay in filing does not, in and of itself, establish prejudice. *Royal*, 122 Wn.2d at 423.

In *McGary*, findings of fact and conclusions of law had not been entered as required by former JuCR 7.11(c), now (d). In his opening brief, the defendant assigned error to the trial court's failure to do so. The State moved to supplement the record and the motion was granted. Addressing the issue, Division One reiterated the rule that findings and conclusions may be entered while an appeal is pending. Noting its disapproval of the State's procedure,

the court recognized that the "practice of entering findings after the appellant has framed the issues in the opening brief has the appearance of unfairness and burdens the court with motions to supplement the record". *McGary*, 37 Wn. App. at 861. The court, however, found no prejudice.

Recently in *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994), the court held that prejudice was not established simply because findings were filed after the appellate process had begun, especially if the findings mirrored the trial court's oral ruling. *See also McGary*, 37 Wn. App. at 861 (findings and conclusions may be submitted and entered even while an appeal is pending; because defendant had not established prejudice from the delayed findings, there was no error).

Mr. Denison acknowledges that the failure to file findings does not automatically result in a dismissal but argues that the trend is toward requiring dismissal on a showing of prejudice. He bases his claim of prejudice here on two grounds: (1) he has served his term and filing findings at this point would be of no aid to him; and (2) the practice of entering findings after he has framed the issues in his opening brief has the appearance of unfairness. I disagree on both counts.

Although findings at this point may be of "no aid" to him, it does not necessarily follow that the failure to file the findings caused him prejudice. On remand the prosecutor and the trial judge will no doubt be aware that one issue is sufficiency of the evidence. But there are procedural safeguards which assure accurate and unbiased findings; we still review to determine whether substantial evidence supports the findings. *State v. Thetford*, 109 Wn.2d 392, 396, 745 P.2d 496 (1987).

The trial court here filed an 11-page oral opinion detailing the basis for its decision. This will certainly serve as the basis for the findings. In addition, Mr. Denison moved to dismiss for insufficient evidence after the State rested. The State was, by that motion, put on notice, early on, of the potential challenge to the sufficiency of the evidence.

The filing of findings while an appeal is pending or after the issues have been framed does not in and of itself prejudice a defendant. And there has been no showing by Mr. Denison that he has been prejudiced here.

Review denied at 128 Wn.2d 1006 (1995).