# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53336-7-II |
| Respondent, | |
| v. | |
| VIC LEE GARDENHIRE, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.—Vic Gardenhire came home intoxicated and got into a fight with his wife. Gardenhire's roommate attempted to call 911, but Gardenhire hit the phone out of the roommate's hand. While Gardenhire was distracted by the roommate, Gardenhire's wife was able to leave to call 911; the police arrived and arrested Gardenhire.

Gardenhire was charged with felony harassment, second degree assault, and interfering with reporting domestic violence. Gardenhire was provided the opportunity to complete a diversion program, which if completed would have resulted in lesser charges. Prior to the completion of the program, the State moved to revoke the diversion agreement, alleging Gardenhire had violated a no-contact order. Gardenhire requested to proceed pro se, but the trial court denied his request. Subsequently, the trial court revoked the diversion agreement and found Gardenhire guilty of felony harassment, second degree assault, and interfering with reporting domestic violence.

Gardenhire argues that (1) the trial court abused its discretion in denying his request to represent himself, (2) the State did not present sufficient evidence to prove all the elements of felony harassment, and (3) the trial court failed to orally explain its finding that Gardenhire was guilty on all charges brought by the State and it failed to enter any written findings of facts or conclusions of law.

Initially, we determined that the trial court erred when it failed to enter written findings of facts and conclusions of law after finding Gardenhire guilty on all counts after a bench trial. We stayed the case and remanded to the trial court for the entry of written findings and conclusions.[1] The trial court entered a document containing only one relevant finding of fact. The finding of fact stated, "The police reports contain sufficient evidence to find the defendant guilty beyond a reasonable doubt of the following charges: 1. Assault in the Second Degree Domestic Violence, 2. Felony Harassment Domestic Violence, 3. Interfering with the Reporting of Domestic Violence, and 4. Interfering with the Reporting of Domestic Violence." Supp. Clerk's Papers (CP) at 137.

We hold that the trial court abused its discretion when it denied Gardenhire's request to proceed pro se. Because this request occurred prior to the revocation of Gardenhire's diversion agreement, we remand for a new diversion revocation hearing. We further hold there is insufficient evidence to sustain Gardenhire's felony harassment conviction. Finally, we conclude that the trial court's "findings," which were nothing more than an opinion by the trial court that the police report contained sufficient evidence to support each conviction, fail to meet the requirements in CrR 6.1.

We reverse and remand for proceedings consistent with this opinion.

---

[1] We now lift that stay.

FACTS

I. ASSAULT AND ARREST

On June 10, 2017, the police were called to Linda Brown's[2] and Gardenhire's home. A police officer met Brown outside a neighbor's house.

Brown told the police that her husband, Gardenhire, was "heavily intoxicated" when he came home earlier that night. CP at 51. Brown had suggested Gardenhire leave the room, and Gardenhire got upset. Gardenhire began to "choke her by pressing his forearm against her neck while simultaneously slapping her on the face." *Id.* Brown said she thought she was going to pass out and possibly die.

Brown was able to call out to a roommate, Antonio Valencia. Valencia came in and pulled Gardenhire off, but Gardenhire got back on top of Brown and again began strangling her with his hands. Gardenhire then released Brown and confronted Valencia because Valencia had said he was going to call 911.

Brown ran outside to call 911; Gardenhire followed her and took her phone away. Brown went to the neighbors to get help. When the police arrived, Valencia was still inside the house with Gardenhire, and Brown told police she was afraid Gardenhire was assaulting Valencia.

The officers went to the front door, which was open, and heard two men arguing. The police did not witness any physical altercations. The police asked both men to exit the residence. Only Valencia left the house. Valencia spoke with the police, and said that Gardenhire had slapped Valencia's phone out his hand after Valencia said he was going to call 911 and Gardenhire told

---

[2] At the time of the incident, Linda Brown was known as Linda Gardenhire. Because Linda Brown and Vic Gardenhire shared the same last name at the time of the incident, for clarity we refer to Linda Brown using her new last name.

Valencia that "'I'm going to kick your ass.'" *Id.* at 52. Valencia believed that Gardenhire was going to assault him. The police obtained a warrant, entered the house, and arrested Gardenhire.

## II. TRIAL PROCEEDINGS

The State charged Gardenhire with one count of assault in the second degree/domestic violence with Brown as the victim, one count of felony harassment/domestic violence with Valencia as the victim, and two counts of interfering with reporting domestic violence.

The trial court granted Gardenhire's request to enter the Thurston County diversion program. As part of this request, Gardenhire stipulated that the facts in the investigation reports were sufficient to find him guilty on all four charges. Gardenhire also agreed to abide by any no-contact or protection orders. The State agreed to reduce the charges if Gardenhire successfully completed the program. A few months later the State moved to revoke the diversion agreement, alleging Gardenhire violated a "No Contact/Protection Order." *Id.* at 16.

At a hearing leading up to the court's determination on whether to revoke Gardenhire's diversion agreement, Gardenhire's attorney notified the trial court that Gardenhire had requested that the attorney not represent him.

Gardenhire interrupted his attorney. The trial court asked Gardenhire to wait, but he continued. The court again asked Gardenhire to wait, and he complied. The trial court then asked Gardenhire if he was asking to represent himself, and Gardenhire indicated that was correct. The trial court confirmed that Gardenhire wanted his attorney to withdraw; Gardenhire replied that he did and began to explain why. The trial court again had to ask Gardenhire to wait before providing his explanation. The trial court then called for a recess so that it could prepare the self-representation colloquy.

After the recess, the court again asked Gardenhire if he wanted to represent himself; Gardenhire said he did. The trial court denied Gardenhire's request after the following colloquy:

[Trial Court]: All right. And have you ever studied law?
[Gardenhire]: I'm a computer software engineer. I'm pretty smart.
[Trial Court]: Have you ever studied law?
[Gardenhire]: Yes.
[Trial Court]: When?
[Gardenhire]: Every day.
[Trial Court]: Have you ever represented yourself in a criminal action?
[Gardenhire]: No, because every time that I do, then I get shut up. Like the reason why you give me the public defender is to shut me up, and that's not gonna happen no more.
[Trial Court]: What is your highest grade of education?
[Gardenhire]: I got some college, and I graduated. But I was a 17 year -- I lived in foster care, and I graduated as an orphan in Washington. You guys ripped me out of my home and then never let me go back home.
[Defense Counsel]: Your Honor, if I could -- excuse me, sir. Those comments are not going to be helpful.
[Gardenhire]: And you're not my attorney.
[Trial Court]: Do you read and write the English -- [your defense attorney] is, in fact, standing in as your lawyer today who has been appointed to represent you.
[Gardenhire]: I didn't hire him.
[Trial Court]: Do you read and write the English language?
[Gardenhire]: Absolutely. The last time I was here, I think you are the one who --
[Defense Counsel]: It's not, sir -- please just respond to [the trial court's] questions, sir, and --
[Gardenhire]: Listen --
[Defense Counsel]: -- just respond to her questions.
[Gardenhire]: -- I need you to stop talking to me.
[Defense Counsel]: I'm not going to stop talking. I'm doing my job.
[Gardenhire]: No, you're not.
[Defense Counsel]: I am.
[Gardenhire]: I called you guys several times, and you didn't do your job.
[Trial Court]: Mr. Gardenhire, I am asking questions right now. This is not your opportunity to provide information to the court. Do you understand that you are charged with assault in the second degree domestic violence, which is a Class B felony; felony harassment domestic violence, which is class C felony; interfering --
[Gardenhire]: Absolutely.
[Trial Court]: -- with the reporting of domestic violence, which is a gross misdemeanor; and another count of interfering with the reporting of domestic violence, a gross misdemeanor?

[Gardenhire]: Absolutely.

[Trial Court]: And do you realize, what there are -- what is the sentencing range as it relates to --

[Gardenhire]: I do.

[Trial Court]: These charges, [Prosecutor]?

[Prosecutor]: Just a moment, Your Honor. Let me see. Count 1, 12 and a day to 14 months; Count 2, 4 to 12 months, and then 364 days on Count 3.

[Trial Court]: And I'm sorry. So Count 1 is 12 and a day to 24?

[Gardenhire]: Bring it.

[Prosecutor]: 12 and a day to 16.

[Trial Court]: To 16. Thank you.

[Prosecutor]: Or, excuse me, to 14.

[Trial Court]: 14. Thank you.

[Gardenhire]: Look at the title of the police report.

[Trial Court]: Okay. I need you --

[Gardenhire]: The title of the police report.

[Trial Court]: -- to be quiet --

[Gardenhire]: Okay.

[Trial Court]: -- because if you can't follow my direction now, no way can you represent yourself.

[Gardenhire]: Fair enough --

[Trial Court]: Do you understand that?

[Gardenhire]: -- fair enough.

[Trial Court]: All right. Do you understand that for Count 1, which is a Class B felony and a strike offense, that if you are found guilty, that the sentencing range would be 12 months and a day to 14 months, which is a prison sentence? Do you understand that?

[Gardenhire]: Yes, I do.

[Trial Court]: And that in Count 2, the sentencing range would be 4 months to 12 months of incarceration if you were found guilty?

[Gardenhire]: Yes, I do think this is irrelevant (sic) though, because --

[Trial Court]: That was --

[Gardenhire]: -- because --

[Trial Court]: -- not my question as to what you think. The question is whether or not you understand what the sentencing range is. So that is my question --

[Gardenhire]: The problem is is that I --

[Trial Court]: -- do you understand --

[Gardenhire]: -- I feel like you're asking me questions, but I can't ask you questions.

[Trial Court]: I find that Mr. Gardenhire does not have the ability to represent himself, because he cannot follow the court's simple direction, and he would be held to the same standards as a lawyer. A lawyer cannot talk out of turn. Mr. Gardenhire talks out of turn.

The court has asked multiple times for him to stop and to simply answer the questions that were being asked. He had an inability to do that, and therefore he does not have the ability to represent himself in this matter --

[Gardenhire]: Are these questions the normal questions?

[Trial Court]: -- and he cannot knowingly and voluntarily waive his rights to counsel, because he has an inability to represent himself for the reasons that I have articulated. And he has no training in the law and is facing a strike offense and a prison sentence. Therefore, I deny his request at this time to represent himself.

[Gardenhire]: Are those questions, like, regulatory questions to ask somebody?

[Defense Counsel]: You need to stop -- stop. Please stop.

Report of Proceedings (RP) (Mar. 7, 2019) at 6-11.

At the diversion revocation hearing, both Brown and an investigating officer testified about Gardenhire's contact with Brown, which was the basis of the revocation motion. The trial court found that Gardenhire had violated his diversion agreement by violating the no-contact order. The trial court revoked the diversion agreement.

Following the diversion revocation, the trial court held a bench trial. At the outset of the trial, the court indicated that it had already reviewed the police reports in the case in order to prepare for trial. The trial court found Gardenhire guilty of the original charges: assault in the second degree, felony harassment, and two counts of interfering with reporting domestic violence. The trial court noted, "Based on the reports that I am allowed to review in deciding the guilt of the defendant in this case, pursuant to the diversion agreement I am finding the defendant guilty of those charges." Verbatim Report of Proceedings (VRP) (Apr. 1, 2019) at 49. The trial court did not enter written findings of fact and conclusions of law on the bench trial.

Gardenhire appealed.

Because the trial court failed to enter findings of fact and conclusions of law, we remanded for the entry of written findings of facts of conclusions of law.

7

On remand, the trial court signed the State's proposed findings of facts and conclusions of law. The trial court found: "The police reports contain sufficient evidence to find the defendant guilty beyond a reasonable doubt of the following charges: 1. Assault in the Second Degree Domestic Violence, 2. Felony Harassment Domestic Violence, 3. Interfering with the Reporting of Domestic Violence, and 4. Interfering with the Reporting of Domestic Violence." Supp. CP at 137.

The trial court concluded: "[T]he defendant is guilty of the following crimes: 1. Assault in the Second-Degree Domestic Violence[,] 2. Felony Harassment Domestic Violence[,] 3. Interfering with the Reporting of Domestic Violence[, and] 4. Interfering with the Reporting of Domestic Violence." *Id.* at 138.

## DISCUSSION

### I. CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION

Gardenhire contends the trial court abused its discretion when it denied him his right to represent himself at trial because, although he was disruptive during the self-representation colloquy, the trial court did not provide him an opportunity to make a knowing, intelligent, and voluntary waiver of his right to counsel. He contends he is entitled to reversal of the order revoking his diversion as well as his convictions, and asks us to remand this matter for a new diversion revocation hearing and, if the trial court again revokes his diversion, a new trial.

The State counters that Gardenhire sabotaged the self-representation colloquy, and thus the trial court did not abuse its discretion by abandoning the colloquy and rejecting his waiver of counsel.

8

We agree with Gardenhire. The trial court abused its discretion when it denied Gardenhire the right to represent himself. In addition to a new trial, because this request occurred prior to the revocation hearing, Gardenhire is entitled to the reversal of the order revoking his diversion agreement and a new hearing on the revocation.

A. LEGAL PRINCIPLES

Criminal defendants have a constitutional right to self-representation under the Washington State Constitution and the United States Constitution. *State v. Burns*, 193 Wn.2d 190, 201-02, 438 P.3d 1183 (2019). "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). The right to self-representation stands in tension with the right to be represented by counsel, and it is neither absolute nor self-executing. *Id.* at 504. A trial court may not allow self-representation in a criminal case unless a defendant first makes a knowing, intelligent, and voluntary waiver of his right to counsel. *Id.*

In order to determine whether a defendant's proposed waiver of the right to counsel is knowing, voluntary, and intelligent, the trial court engages the defendant in a colloquy on the record. *Burns*, 193 Wn.2d at 203. To determine whether a defendant understands the risks of self-representation the trial court should discuss with the defendant the nature of the charges, the maximum penalty, and the technical and procedural rules the defendant must follow. *Id.* The trial court may also discuss "education, experience with the justice system, mental health, and competency[,]" as well as evaluate "the defendant's behavior, intonation, and willingness to cooperate with the court." *Id.* A trial court asks about the defendant's legal experience and

9

education only to determine if the defendant understands the consequences of waiving counsel. *State v. Vermillion*, 112 Wn. App. 844, 857, 51 P.3d 188 (2002). These questions are not to be used to "determine whether [the defendant] has sufficient technical skill to represent himself." *Id.* A court may not deny a motion to proceed pro se solely because it is detrimental to the defendant's case or because courtroom proceedings would be less efficient or orderly. *Madsen*, 168 Wn.2d at 505.

If a motion for self-representation is both unequivocal and timely, the trial court may only deny the request if the defendant's proposed waiver is not knowing, intelligent, and voluntary. *Id.* at 504-05. The trial court is required to indulge in "'every reasonable presumption'" against a defendant's waiver of the right to counsel. *Id.* at 504 (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)).

We review a trial court's denial of a request for self-representation under an abuse of discretion standard. *Burns*, 193 Wn.2d at 202. A trial court abuses its discretion if its decision is manifestly unreasonable, if it relied on facts not in the record, or if it applied the wrong legal standard. *Madsen*, 168 Wn.2d at 504. We give great deference to the trial court in questions of waiver of the right to counsel because the trial court is in a more favorable position to evaluate the request. *Burns*, 193 Wn.2d at 202. If there was an adequate inquiry into the request and "there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary," the decision will not be overturned. *Id.* at 204. Where no colloquy is conducted, reviewing courts have found the record insufficient to review the basis for the trial court's oral ruling. *Id.* "[T]he court cannot stack the deck against a defendant by not conducting a proper

colloquy to determine whether the requirements for waiver are sufficiently met." *Madsen*, 168 Wn.2d at 506. The improper denial of the right to self-representation requires reversal. *Id.* at 503.

B. ANALYSIS

When Gardenhire asked to represent himself the trial court initially attempted to conduct a colloquy with him to determine whether his waiver of counsel was knowing, intelligent, and voluntary. The trial court had presumably concluded that the request was both timely and unequivocal. As the colloquy began, Gardenhire was clearly agitated. He was frequently non-responsive to the trial court's questions, attempted to engage the trial court in a debate, and was rude.

The trial court repeatedly attempted to advise Gardenhire of the sentencing range for his alleged offenses, one of the most critical pieces of information he would need to make an informed waiver. Gardenhire indicated he understood the sentencing range as to count 1, but as to count 2, he replied that the sentencing range was "irrelevant." RP (Mar. 7, 2019) at 10. When the trial court again tried to advise him of the sentencing range, Gardenhire replied, "The problem is is [sic] that . . . I feel like you're asking me questions, but I can't ask you questions." *Id.*

At that point the trial court ended the colloquy, stating that Gardenhire would not be permitted to represent himself because he "cannot follow the court's simple direction." *Id.* The trial court further stated that Gardenhire would be held to the same standards as a lawyer, but lawyers are not permitted to talk out of turn as Gardenhire was doing. The trial court concluded by saying "he has no training in the law and is facing a strike offense and a prison sentence. Therefore, I deny his request at this time to represent himself." *Id.* at 11.

We conclude on this record that the trial court abused its discretion by not giving Gardenhire the opportunity to make a knowing, intelligent, and voluntary waiver of his right to counsel before denying his self-representation request. There is no question that Gardenhire was obnoxious, and we are mindful that the trial court must indulge every presumption against waiver. *Madsen*, 168 Wn.2d at 504. But the right to represent oneself is fundamental, and we are not persuaded that the trial court could not have ultimately completed the self-representation colloquy with more effort.[3] *Id.* at 509. Although interjecting questions to the trial court during the colloquy disrupted the flow of the colloquy and no doubt prolonged it, asking questions of the trial court while making a waiver of counsel is not, in itself, unreasonable. Moreover, some allowance must be given to a defendant who, unlike his attorney, is not a regular participant in hearings before the court. "A court may not deny pro se status merely because the defendant is unfamiliar with legal rules or because the defendant is obnoxious." *Id.*

The trial court's second rationale for denying Gardenhire's motion to represent himself is equally untenable. The trial court was concerned that Gardenhire lacked training in the law and, because he was facing a strike offense and a potential prison sentence, could not make a knowing, intelligent, and voluntary waiver of his right to counsel. This reflects the trial court's concern that proceeding without counsel would be "detrimental to [Gardenhire's] ability to present his case," a consideration that cannot form the basis of the denial of a request for self-representation. *Id.* at

---

[3] We cannot say that had the trial court made an effort to reduce tension in the courtroom by stopping to answer Gardenhire's questions, taking a recess, or instructing defense counsel not to speak to Gardenhire during the colloquy, it would not have resulted in a successful colloquy. As Justice Fairhurst observed in her concurring opinion in *Madsen*, "[i]f a court could refuse to undertake a colloquy, the court could effectively strip defendants of the right to self-representation by ensuring that a record is insufficient to show a knowing, voluntary, and intelligent waiver." 168 Wn.2d at 512 (Fairhurst, J., concurring).

505. Provided they have first executed a proper waiver of the right to counsel, defendants are entitled to make poor decisions, even when such decisions may cause them significant harm.

The State relies on *Burns* to argue the trial court properly denied Gardenhire's request to proceed pro se. Burns was facing charges for second degree assault and felony violation of a no-contact order, and he requested to proceed pro se. *Burns*, 193 Wn.2d at 194. The trial court held a hearing regarding that request but questioned whether Burns was even competent to stand trial. *Id.* at 194, 196. The court was also concerned whether Burns understood the criminal system and the potential consequences he was facing. *Id.* at 194-98. The court was concerned because even though Burns repeatedly stated he understood the court, Burns insisted "[t]hese matters" did not pertain to him because he was "not contracted into your place of business." *Id.* at 194-95. The court explained to Burns that he was accused of a crime and the law did not require a contract in order for him to be tried. *Id.* at 195. But Burns insisted because he rejected "the contract," there was no case against him. *Id.* at 197. The court was unable to ascertain what contract Burns was referencing. After an extensive colloquy, the court denied Burns' request to proceed pro se because Burns was unable to understand the nature of the charges he was facing and how serious the situation was. *Id.* at 198, 205. The supreme court upheld the trial court's denial for the same reasons. *Id.* at 206.

There are significant differences between the facts in this case and the facts in *Burns*. In *Burns*, the court noted that even though Burns repeatedly stated, "'I understand completely,'" other remarks indicated he did not understand the situation. *Id.* at 204. Burns insisted that there was not a case because he had rejected an unspecified contract. *Id.* at 197. Gardenhire never used the nonsensical language that Burns did. And unlike Burns, Gardenhire never appeared to lack a basic understanding of the justice system. While Gardenhire at one point said he thought the sentence

range was "irrelevant," Gardenhire never had the opportunity to explain why he thought it was irrelevant. RP (Mar. 7, 2019) at 10. Significantly, the trial court in *Burns* engaged in a "comprehensive colloquy" with the defendant, which was lacking here. 193 Wn.2d at 204.

Moreover, here, the trial court did not identify any fact in the record that indicated Gardenhire's waiver of counsel was not knowing, intelligent, and voluntary. Gardenhire said that he "[a]bsolutely" understood the charges against him, and he stated that he understood the sentencing range. RP (Mar. 7, 2019) at 8. Additionally, while Gardenhire said, "Bring it" when he heard the sentencing range, there are no other statements on the record that indicate he did not appreciate the severity charges. *Id.* Significantly, the trial court did not deny Gardenhire's request because he did not understand the nature and seriousness of the charges against him. Rather, the trial court was more concerned with the orderly administration of justice, which is an insufficient basis on which to deny Gardenhire his right to represent himself. *Madsen*, 168 Wn.2d at 509.

The trial court abused its discretion when it denied Gardenhire's motion to represent himself without giving him an adequate opportunity to make a knowing, intelligent, and voluntary waiver of his right to counsel. We reverse the order revoking Gardenhire's diversion agreement, and we reverse Gardenhire's convictions. As to Gardenhire's convictions for assault and interfering with the reporting of domestic violence, we remand this matter for a new diversion revocation hearing and, if revocation occurs, a new trial. As to Gardenhire's conviction for felony harassment, we reverse that conviction and order it to be dismissed with prejudice for the reasons set forth below.

## II. Insufficient Evidence

Gardenhire argues there is insufficient evidence to prove felony harassment because he never threatened to kill Valencia. Gardenhire argues that at most, he only threatened to "'kick your ass,'" a threat that only indicates an intent to harm, not to kill. Br. of Appellant at 12 (quoting CP at 52). The State responds that given the context of Gardenhire strangling of Brown, it is reasonable to infer that Gardenhire's threat against Valencia was a threat to kill.

We conclude the trial court's finding is insufficient to support a conclusion that Gardenhire is guilty of felony harassment. Furthermore, upon reviewing the police report on which the trial court's finding was entirely based, we conclude there is insufficient evidence to support a felony harassment conviction.

## A. Legal Principles

### 1. Sufficiency of the Evidence

The State is required to prove every element of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find, beyond a reasonable doubt, the essential elements of the crime. *Id.* In a claim of insufficient evidence "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Such inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Following a bench trial, we review whether substantial evidence supports the

trial court's findings of fact and whether the findings then support the trial court's conclusions of law. *Homan*, 181 Wn.2d at 105-06.

### 2. *Felony Harassment*

RCW 9A.46.020 provides that if a defendant threatens to kill an individual and by words or conduct places the victim in reasonable fear that the defendant will carry out that threat to kill, that defendant is guilty of felony harassment. *State v. C.G.*, 150 Wn.2d 604, 610, 80 P.3d 594 (2003). The nature of a threat depends on all the surrounding facts and circumstances, and the trial court is not limited to considering only the literal meaning of the defendant's words. *Id.* at 611. However, only a true threat can support a conviction for harassment, as opposed to words "which are in fact merely jokes, idle talk, or hyperbole." *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

### B. ANALYSIS

#### 1. *Insufficient Evidence for Felony Harassment*

Here, the trial court's finding that, "The police reports contain sufficient evidence to find the defendant guilty beyond a reasonable doubt of . . . Felony Harassment Domestic Violence" is insufficient to uphold a felony harassment conviction. Supp. CP at 137. The trial court fails to mention any element of felony conviction or any corresponding facts. This bare assertion by the trial court is insufficient to sustain this conviction.

Gardenhire's threat "'to kick [Valencia's] ass'" conveyed, at most, a threat to harm Valencia, not a threat to kill him. CP at 52. Nothing in the record demonstrates that Gardenhire made any other statements to Valencia or to another person about killing Valencia. Nor does the record indicate any other conduct by Gardenhire that would indicate Gardenhire threatened to kill

Valencia. Finally, Valencia told the police that he was afraid that Gardenhire would assault him, but he did not say that he was afraid that Gardenhire would kill him.

Accordingly, we conclude that the trial court's finding is insufficient to support the conclusion that Gardenhire is guilty of felony harassment, and the evidence in the police report is likewise insufficient to support Gardenhire's conviction of felony harassment.

*2. Remedy*

Gardenhire argues that the proper remedy is for the felony harassment charge to be vacated and dismissed. The State argues that if we conclude that the evidence is insufficient, we should remand to the trial court to enter a judgment on a lesser offense of gross misdemeanor harassment. Because the trial court has twice failed to enter sufficient findings, we will not remand this case again to provide the trial court a third opportunity to enter appropriate findings. Thus, we agree with Gardenhire.

"[W]hen an appellate court finds the evidence insufficient to support a conviction for the charged offense, it will direct a trial court to enter judgment on a lesser degree of the offense charged when the lesser degree was *necessarily proved* at trial." *State v. Garcia*, 146 Wn. App. 821, 830, 193 P.3d 181 (2008) (emphasis added). The fact finder needs to have found "'each element of the lesser included offense in reaching its verdict on the crime charged.'" *In re Pers. Restraint of Heidari*, 174 Wn.2d 288, 292, 274 P.3d 366 (2012) (quoting *and abrogating State v. Gilbert*, 68 Wn. App. 379, 385, 842 P.2d 1029 (1993). Remand is only proper "'if the record discloses that the trier of fact *expressly* found each of the elements of the lesser offense.'" *State v. A.M.*, 163 Wn. App. 414, 422, 260 P.3d 229 (2011) (quoting *State v. Green*, 94 Wn.2d 216, 235, 616 P.2d 628 (1980)).

Here, the trial court failed to submit any substantive findings. In order to remand on a lesser charge, the fact finder needs to have found the State proved every element of that charge. *Heidari*, 174 Wn.2d at 292. Without sufficient findings on the record, it is impossible to determine if the trial court found all the elements of the lesser charge. While the police report shows that Gardenhire uttered words toward Valencia that could be construed as a threat, there is no finding of fact by the trial court that this was a true threat. Similarly, even if the threat of harm was a true threat, there is no finding of fact by the trial court that Valencia's fear that the threat would be carried out was reasonable. These are necessary factual findings that must be made by the trial court, and which cannot be discerned from a police report.

Accordingly, because the evidence is insufficient to support Gardenhire's conviction of felony harassment and the trial court failed to enter findings that would support a conviction for gross misdemeanor harassment, we reverse Gardenhire's felony harassment conviction and remand for dismissal with prejudice.

### III. FAILURE TO ENTER SUFFICIENT FINDINGS AND CONCLUSIONS

Gardenhire argues that on remand the trial court failed to enter written findings of fact and conclusions of law that satisfy the requirements of CrR 6.1. Gardenhire notes the trial court failed to reference any specific fact or even mention an element of any of the charged counts. As we note above, we agree with Gardenhire that the finding entered by the trial court on remand was insufficient. However, because the State argues that we should remand this matter to the trial court *again*, and give the court a third opportunity to enter sufficient findings and conclusions, we briefly explain why this is not appropriate here.

The trial court's conclusory findings are insufficient to meet the standards in CrR 6.1. A trial court must enter written findings of fact and conclusions of law after a bench trial. CrR 6.1(d). The findings should address each element separately and the trial court should indicate the factual basis for each element. *State v. Denison*, 78 Wn. App. 566, 570, 897 P.2d 437 (1995). Here, the trial court merely found that "[t]he police reports contain sufficient evidence" before determining Gardenhire was guilty of each count. Supp. CP at 137. The trial court failed to identify either the elements for any of the charges against Gardenhire or what facts in the record indicated the elements were met.

Normally, if a trial court fails to provide sufficient findings, the appropriate remedy, when there is a question of insufficient evidence, is to remand for entry of findings. *State v. Head,* 136 Wn.2d 619, 625-26, 964 P.2d 1187 (1998); *Denison*, 78 Wn. App. at 572. However, we have already remanded this case for that purpose. The State fails to provide us with any authority that would indicate we are required to remand this matter a second a time.[4] In *State v. I.N.A.*, which Gardenhire points us to, a juvenile appealed her sentence because it was outside the standard range. 9 Wn. App. 2d 422, 426-27, 446 P.3d 175 (2019). INA requested an expedited appeal that was granted. *Id.* at 424. The prosecutor failed to secure the juvenile court's findings and conclusions in time for the appeal. *Id.* at 427. Therefore, Division One of this court ordered the prosecutor to obtain the necessary findings and conclusions. *Id.* The prosecutor obtained findings and conclusions from the trial court but did so without notifying INA. *Id.* This, our court held, was

---

[4] Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

wholly improper. *Id.* In light of the State's litigation misconduct, the court concluded it could either (1) remand the case again for proper entry of findings and conclusions or (2) decide the case as if findings and conclusions had never been entered. *Id.* at 425. The court decided to proceed without the findings and conclusions because "the State should not be allowed to deprive an incarcerated juvenile offender of the benefit of expedited review simply by violating applicable rules of procedure." *Id.*

Here, Gardenhire's case is similar to *I.N.A.* In both cases the appellate court was not initially provided with the trial court's findings of fact or conclusions of law, the case had to be remanded, and the remand was unsuccessful. *Id.* at 424. Likewise, here, Gardenhire should not be deprived of the benefit of a timely appeal based on the trial court's failure to enter sufficient findings even after being given two opportunities to do so. We see no reason to cause further prejudice to Gardenhire by remanding this case again.[5]

## CONCLUSION

The trial court erred when it denied Gardenhire's request to represent himself. Further, the evidence is insufficient to sustain Gardenhire's conviction for felony harassment.

Accordingly, we reverse the order revoking Gardenhire's diversion, and we reverse and remand his remaining convictions for proceedings consistent with this opinion. Additionally, we

---

[5] We recognize that *I.N.A.* is a juvenile case and as such it is treated differently. However, we do not believe that a defendant's case should be allowed to languish on appeal merely because the defendant is an adult. We also recognize that delay alone is insufficient to infer the requisite prejudice for a CrR 6.1(d) challenge. *Head*, 136 Wn.2d at 625. However, this is not merely a case of delay. We do not believe the remedy of reversal is unduly harsh in light of the fact that this case has already been remanded once and the trial court merely instructed us to read the police report and make the necessary factual inferences ourselves—which we are prohibited from doing.

No. 53336-7-II

reverse Gardenhire's felony harassment conviction and remand that charge for dismissal with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

SUTTON, J.